## In re VEDDER'S ESTATE.

### In re CLARK.

(*Supreme Court, General Term, Third Department.* December 28, 1891.)

1. INTEREST ON LEGACY—MAINTENANCE—EVIDENCE.

Testator, after devising his property to his wife for life, bequeathed a legacy of $8,000 to a person whom he and his wife, by a joint indenture, had received as an apprentice, to be treated, as far as practicable, as an adopted daughter. After the death of the wife, the legatee claimed interest on the legacy, on the ground that the same was given for maintenance. *Held*, testator having given all the income and profits of his estate to his wife, and she being obligated by the indenture to support the legatee during her minority, that the legacy was not intended for maintenance, and that interest was properly disallowed. 15 N. Y. Supp. 798, affirmed.

2. BEQUEST OF "INCOME AND PROFITS"—INCREASE IN THE VALUE OF SECURITIES.

A devise of an estate to testator's wife, to take the "income and profits" thereof during her life, will not entitle the wife to the absolute ownership of a sum accruing to the estate from a rise in the value of securities belonging to the estate. 15 N. Y. Supp. 798, affirmed.

3. ACTIONS TO CONSTRUE WILLS—RES ADJUDICATA.

Testator's heirs at law are not bound by the statement in a judgment entered in an action by executors, brought for the construction of the will, that the "excess" over one-half of testator's estate, as 'to which a charitable bequest has been adjudged void, goes to testator's next of kin, and may afterwards maintain an action asserting title to such "excess." 15 N. Y. Supp. 798, reversed.

Appeal from surrogate's court, Rensselaer county.

Judicial settlement of the accounts of Otis G. Clark, executor of Nicholas S. Vedder, deceased. Ida A. Vedder appeals from the decree of the surrogate disallowing interest on a legacy to her. Simon F. Mann, executor of Nancy A. V. Hartshorn, widow of testator, (afterwards married,) appeals from the same decree, disallowing her a certain increase in the value of securities of the estate as "income and profits" thereof; and Willard K. Brooks and others, heirs at law of testator, appeal from the same decree, requiring them to share in certain property, as to which testator died intestate, as next of kin. The decree was affirmed in every particular except as to the appeal

of the heirs at law, as to which the decree was reversed. For report of surrogate's decision, see 15 N. Y. Supp. 798.

Argued before LEARNED, P. J., and MAYHAM and PUTNAM, JJ.

*McClellan & McClellan,* (*Robert H. McClellan,* of counsel,) for appellant Simon F. Mann. *Seymour Van Santvoord,* for appellant William Lord, special guardian. *Hale & Buckley,* (*Matthew Hale,* of counsel,) for appellants Willard K. Brooks and others. *Townsend, Roche & Nason,* for appellant Otis G. Clark, executor. *John H. Peck,* for respondents Trustees of the Troy Annual Conference. *King & King,* (*Edwin A. King,* of counsel,) for respondent Troy Orphan Asylum. *Sanders & Myers,* for respondents John E. Cary and others. *Horatio G. Glen,* for respondents Catherine M. Phillips and another.

LEARNED, P. J. This matter comes here by appeal from an accounting before the surrogate. There are three separate appeals, and five separate respondents. Ida A. Vedder appeals, and claims interest on a legacy of $8,000 left to her. Willard K. Brooks and others appeal. They claim certain interests in real estate as heirs at law, not next of kin, which estate has been sold. Simon P. Mann, executor of the widow, (who afterwards married one Hartshorn,) and who was entitled to income, appeals, claiming the benefit of a certain increase in securities, and also as to the application of the costs. Some of the respondents oppose all of these appeals, others all but that of Willard K. Brooks and others.

First, as to the appeal of Ida S. Vedder. The deceased died in 1879. By his will, executed July 25, 1867, he gave his wife a life-estate, and after her death certain legacies, among them—*Fourth,* to Fanny A. Mann, $5,000; *ninth,* to Martha Mann, $3,000; with a contingent bequest to others. By a codicil, executed June 5, 1875, he canceled these two bequests, describing them, and then declared: "And in place and stead thereof I give and bequeath the sum of eight thousand dollars, being the sum of said two former bequests, to my daughter Ida A. Vedder." On the 11th of September, 1875, the testator and his wife executed an indenture with the American Female Guardian Society, by virtue of which said Ida was apprenticed to them till she was 18. It was stated, however, therein, that it was intended that said Ida should be taken, as far as practicable, into the family as an adopted child. She was then 4 years old. She was treated as an adopted child during the life of the testator. From his death down to the death of his widow, June 8, 1890, Ida was educated and supported by the widow as a daughter, and in correspondence with the situation in life of the said widow. It is not shown that Ida had any estate of her own except this legacy. She now claims that it is presumed that the legacy was given for maintenance, and therefore that it draws interest from testator's death. The question in such cases is, what did the testator intend, ascertained by what he said and the surrounding circumstances? When courts say that the testator must have been presumed to mean what he did not say, they are groping in the dark, and making, instead of construing, a will. This testator need not have given any legacy to Ida. He was at liberty, also, to say when the legacy which he did give should be paid. He was not obliged to say that she should have the interest meantime. And he did not say so. On the contrary, he gave all the income and profits of his estate to his widow, excepting such property as he had previously bequeathed to her absolutely. Therefore he could not have intended that any of the income should be paid to Ida for maintenance; for, if interest on the legacy was to be paid to her for maintenance, it would have to be paid every year. It would be absurd to say that, for the purpose of maintenance, an accumulation of interest should be paid to Ida after the death of the widow. But the interest on the legacy could not be paid to Ida every year, because all the interest on the whole estate was to be paid to the widow. It is practically the same as

if the will had directed the executors to set apart $8,000, to pay the interest thereon to the widow during her life, and at her death to pay the principal to Ida. It would hardly be presumed, under such a bequest, that the testator intended to give to Ida that which he had expressly given to the widow, viz., the interest. In the present case, the testator gave to the widow for life all the income, including that arising from the $8,000 ultimately bequeathed to Ida. Thus he shut out the construction for which Ida contends.

Let us suppose that the testator had given the income of his whole estate to his widow for life, and after her death the whole estate to Ida. According to the argument urged on us, as the testator stood in the place of a parent to Ida, the legacy was for maintenance. Therefore she must have the interest on the bequest from his death. Hence the widow would have no income whatever. That is but pressing the rule contended for to its legitimate result. If Ida can deprive the widow of a part, why not of the whole income? For it is the right to interest, not to principal, which is asserted. Again, by the will two legacies were to be given to testator's wife's sisters, amounting to $8,000. Certainly these legacies did not carry interest, even by the most violent presumption which could be indulged in; and therefore unquestionably there was under the will no deduction to be made from the income of the widow to pay interest on these legacies. The codicil only cancels these legacies, and gives "the sum of said two former bequests" to Ida. Hence she would not receive any more than those legacies, and, clearly, would not be entitled to interest. Again, although the codicil is dated a short time prior to the indenture of adoption, yet the codicil speaks of Ida as "my adopted daughter." It is reasonable to suppose that the arrangement carried out by the indenture had already been made, at least verbally; and, at any rate, long before the will and codicil took effect, the indenture of nominal apprenticeship, but practical adoption, had been executed by the testator, and by his wife. He had a right, then, to expect that Ida, who must have been about 8 at his death, would, at least till she was 18, the age mentioned in the indenture, be cared for by the widow, who was herself a party to the indenture. *Van Bramer* v. *Hoffman*, 2 Johns. Cas. 200. Such expectations, if he had them, were fully realized. Ida must have been 19 at the death of the widow, and up to that time she had been maintained and educated as a daughter. If a father gives his property to his widow for her life, with remainder to his children, it must be supposed that the children would be supported by the widow; and that is the thought which the testator must have had in this case.

These views leave us no reason to doubt what the testator in fact intended. It is urged, however, on behalf of Ida, that an established rule of construction compels us to disregard his plain intention, and to assume that he meant something else. As is said in *Thorn* v. *Garner*, 113 N. Y. at 202, 21 N. E. Rep. 149, there are "certain facts which the courts have agreed are equivalent to an express direction * * * to pay interest, because from such facts the courts will presume an intention * * * to have it paid." In *Bradner* v. *Faulkner*, 12 N. Y. 472, it was said that, in the absence of express direction, the intent of the testator to authorize the payment of interest should clearly appear. The case of *Cooke* v. *Meeker*, 36 N. Y. 15, held that where the testator gave a sum of money to a trustee in trust to invest in bond and mortgage, and apply the income to the use of his granddaughter during her natural life, the granddaughter was entitled to the interest from the testator's death. That is a case quite different from the present. The legacy was expressly for use during life. The opinion contains numerous English cases on this point. In *Brown* v. *Knapps*, 79 N. Y. 136, the will was as follows: "I give, devise, and bequeath to my grandson * * * the sum of $3,000, and direct my executor * * * to pay to him the same when he shall attain the age of twenty-one years." There was a gift over if he should die before 21. The

residue, after legacies, was given to his son. It was held that this legacy carried interest, the grandson being about 7 at the testator's death. Here there was a distinct setting apart of $3,000, no provision as to what should be done with the income, and the time of paying over was at maturity. It was inferred that the infant was to have the benefit during his minority. In *Keating* v. *Bruns*, 3 Dem. 234, property was given to trustees to pay the income to an adopted daughter. It was held that she ought to have the income during the year succeeding the testator's death. The will provided for the disposition of the principal fund after the death of the beneficiary. But it does not appear that the income was disposed of in any way, except for the use of the beneficiary. In *Neder* v. *Zimmer*, 6 Dem. 180, 3 N. Y. Supp. 133, the gift was of money in a savings bank to three children, each to have his share when he arrived at 21. It was held that the children were severally entitled to the interest. Now, without citing other cases, it will be seen that the principle seems to be applied when it is in harmony with, or not in violation of, the provisions of the will. The cases cited were unlike the present, and we think that the principle does not apply. *Lyon* v. *Association*, (Sup.) 5 N. Y. Supp. 326. The surrogate was right.

The next question we consider is that presented by the executor of the widow. The personal securities held by the executors of the testator were sold by them after the death of the widow. A premium of $8,659.63 was received therefor in excess of the premium at which securities had been charged in the previous decree of 1882. Her executors claim this as income to which the widow was entitled. The will rather tautologically gives the wife "the income of all my other estate, both real and personal;" and again, in the same item, "the profits of all my other estate, both real and personal." But there is no difference in the meaning of the words. In the next item he gives, after his wife's death, "the income and profits" of $10,000 to Anna Van Geysling during her life, using thus the same language. Then he disposes of the whole of his estate. This use of the words "income and profits" is only due to the lawyer-like fondness for using several words where one is sufficient. If the executors had not sold the real estate, and if the real estate had increased in value during the widow's life, she would not have been entitled to the increase. So with personal property. This question is carefully discussed and fully settled in *Re Gerry*, 103 N. Y. 445, 9 N. E. Rep. 235. We think that the use of the word "profits" in these items of the will has no additional meaning to the words construed in that case. The decision of the surrogate was correct.

The remaining question is that on the appeal of Willard K. Brooks and others, grandnephews and a grandniece of the testator. It has been held in an action in this court that the gifts, after the death of the widow, to the Troy Orphan Asylum and the Troy Conference, under the statutes of the state, were void, so far as they exceed one-half the testator's estate; and that as to such portion the deceased died intestate, except as to the widow's life-estate. Laws 1860, c. 360. No dispute is made as to the law in this respect. These appellants claim nothing as to the personal estate, (2 Rev. St. marg. p. 96, § 75,) but they claim as heirs at law their share of the real, (3 Rev. St. marg. p. 752, §§ 8, 9.) The personal estate was enough to pay all the legacies, including the half to which the aforesaid corporations are entitled. There was in the will an authority, but not a direction, to sell real estate. Nor is the purpose of such authority expressed in the will. It could only be for the purposes of the will. *Wood* v. *Cone*, 7 Paige, 471. There was no purpose of the will for which such sale was needed. There was therefore no conversion of the real into personal property. A discretionary power produces no such effect. *White* v. *Howard*, 46 N. Y. 162; *Chamberlain* v. *Chamberlain*, 43 N. Y. 431; *Chamberlain* v. *Taylor*, 105 N. Y. 185, 11 N. E. Rep. 625. The real estate, (subject to the life-interest therein of the widow,) so far as it was undisposed of, vested at

once in the heirs at law. The gift of the income to the widow gave her a life-estate in the land. 1 Rev. St. marg. p. 727, § 47. She was not the mere beneficiary of a trust in respect to the land, but had the estate, and the undisposed-of remainder vested in the heirs at law. It may be doubted whether the power of sale existed in respect to this land, as to which the testator made no devise. Id. marg. pp. 730, 734, §§ 67, 102; *Chamberlain* v. *Taylor, ubi supra.* It is not necessary to decide that question here, since these heirs at law, by coming in and claiming a share of the avails, practically ratify the sale by the executors. But we are satisfied that these heirs are entitled to their share of the avails unless they are deprived thereof by a previous decision of the court. An action was heretofore brought by the executors for the construction of the will. To that action these heirs at law were parties. In the judgment entered in that action, June 11, 1880, it was, among other things, adjudged that the will provided for the conversion of the real into personal property, and that the whole estate must be considered and treated as personal property. The next of kin of the testator now claim that that judgment establishes their right to this undisposed-of share of the estate, and estops these heirs from their legal rights. Now, that action was solely for the instruction and aid of the executors. So far as this share of the real estate was concerned, they had no duties under the will, for it was not disposed of thereby. We have seen that it is even doubtful whether this power of sale extended so far. In *Rathbone* v. *Hooney,* 58 N. Y. 463, there had been a foreclosure, to which one Mr. Brown was a party defendant. Mrs. Brown held an interest in the estate as trustee for Maria Rathbone's life, and also in her own right as remainder-man, and she had executed a mortgage. Her own estate she could mortgage; the trust-estate she could not. It was held that, though the judgment in foreclosure cut off her own estate, it did not cut off the trust-estate. The court said that "that judgment was final for its own proper purpose and object, and no further," and that Mrs. Brown "was not bound to set up her claim as trustee when made a party to the foreclosure, in the absence of any averment in the complaint, in respect to that interest or claim, that it was subject to the mortgage." The proper object of such a suit has been passed upon, (*Bailey* v. *Briggs,* 56 N. Y. 407; *Dill* v. *Wisner,* 88 N. Y. 153;) and lately by this general term in *Avery* v. *Mabey,* 16 N. Y. Supp. 607, (December, 1891.) It can be maintained when the executors have some duty in the way of a trust. As to the real estate now in question, the executors had none. And it will be seen that the judgment is general in its terms, stating that the "excess" over one-half of the gross amount of the estate goes to the next of kin. It is not questioned that this is correct as to the personal property, and nothing appears in that judgment as to the amount of either real or personal. There is no doubt as to the rule of *res adjudicata.* The only question is whether, in such an action as that above mentioned, brought for the construction of the will in respect to the duties of the executors, these heirs at law are bound by the statement that the "excess" goes to the next of kin. On the whole consideration of the question, we are of opinion that they are not.

Some question is made as to the discretion of the surrogate in charging executors' fees and expenses of accounting. He directed that these items should not be charged against the portion of the estate in which the Troy Orphan Asylum and the Troy Conference were entitled to share, but against that portion in which the widow and next of kin are entitled to share. As we have taken the view that the avails of the real estate go to the next of kin, there must be a modification of the surrogate's decree after an ascertainment by him of the amount of those avails. This may render a new adjustment of costs necessary, since the heirs have not been heard upon that point. We think it best, therefore, to say nothing upon the question of costs. The decree must be affirmed, except so far as it adjudges that the avails of the real

estate be distributed among the next of kin, in which respect it must be reversed, and the matter sent back to the surrogate to ascertain the amount of such avails, and to provide for the payment thereof among the heirs. The question of the charging the costs and executors' fees will, of course, be open to such readjustment as the surrogate may make, in view of these new interests. The appellants Brooks and others will .be entitled to costs of this appeal against the next of kin and the executor of the widow. The respondents the Troy Orphan Asylum, the Troy Conference, and executors will be entitled to costs of this appeal against Ida A. Vedder. The respondent Clark, executor, will be entitled to costs of this appeal out of the estate. This order may be settled before MAYHAM, J. All concur.