FRANCES H. DUCLOS et al., Appellants and Respondents, *v.* MARY S. BENNER, Individually, etc., et al., Appellants and Respondents.

The will of B., who died in 1876, gave all of his estate to his executors in trust; among other things to set apart and invest $30,000, or one-third of the appraised value of the personal estate, as his wife might elect, and pay over to her the "income, interest, profits and earnings thereof" during her life "half yearly," and to divide the residue of the estate into six equal parts to be held upon certain specified trusts. The wife was appointed and acted as one of the executors and trustees and had the entire management and control of the estate. In 1878 the trustees purchased $40,000 of U. S. four per cent bonds at a premium of one-fourth of one per cent: the widow made no election until 1884, when she elected to have the $30,000 set apart. No particular item was set apart and no division of the residue into parts was made, but the whole estate was kept together. She took annually a sum equal to the interest at four per cent on $30,000. It did not appear, however, that this was interest received upon the bonds. In 1888 said bonds were sold for $11,187.50 more than the amount paid for them. In an action, among other things to determine the rights of the parties under the will, the widow claimed three-fourths of that sum as the profit from the $30,000 invested for her. *Held*, untenable, that having omitted to elect under the will until 1884, she could not claim that her election should relate back to the time the bonds were purchased, and there was no basis for the claim that the sum in controversy was the profit or income from any portion of the estate set apart for her benefit.

Also *held*, that the widow was not entitled to the difference between the sum received by her and the legal rate of interest on $30,000, in the absence of a finding that more than four per cent was earned.

The will provided that the income of one of the six parts should be paid over to the testator's son C. during life and upon his death the principal divided among the lawful issue of C. "him surviving *per stirpes* and not *per capita;*" a similar provision was made for a daughter. Three parts were disposed of for the benefit of three daughters, the share of each to be paid over to her on her marriage or arrival at maturity; the income of the sixth part was to be paid over for the support of H., a grandson, during minority, the principal to be paid to him on his attaining maturity; in case H. died without issue the will provided that the share held for him should be divided among the testator's "surviving children and the lawful issue of those who shall have died in the same manner as hereinbefore provided." H. died during minority without issue; the five children of the testator survived and were of age. *Held,*

that upon the death of H. the title to his share was vested absolutely in said five children of the testator, each being entitled to a one-fifth part thereof.

*Duclos* v. *Benner* (62 Hun, 428), reversed.

(Argued December 15, 1892; decided January 17, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1891, which modified and affirmed as modified a judgment construing the will of Hiram Benner, deceased, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. Bainbridge Smith* for plaintiffs.    The widow of the tes-tator is, by the provisions of the will, entitled to the profits which arose from the purchase and sale of the government bonds to the amount of $30,000.    (*Lansing* v. *Tompkins*, 45 Barb. 316; *Duclos* v. *Benner*, 5 N. Y. Supp. 733.)    It was the right and duty of the executors to appeal and bring this important question before the court at General Term.    (*Bockes* v. *Hathorn*, 78 N. Y. 222.)    The General Term was clearly right in holding the Hiram Benner Bonta interest subject to the same trusts as other portions of the estate.    (*Covenhoven* v. *Shuler*, 2 Paige, 122; *Clark* v. *Clark*, 8 id. 152; *Roe* v. *Vingut*, 117 N. Y. 204.)

*J. A. Shoudy* for defendants.    There was no trust created with respect to the plaintiffs' shares in the estate bequeathed to Hiram Benner Bonta in the event of his dying without leaving lawful issue.    (*Croner* v. *Pickney*, 3 Barb.° Ch. 475; 2 Story's Eq. Juris. § 119; *Roseboom* v. *Roseboom*, 81 N. Y. 356.)    The executrix had no claim to or interest in the $30,000 United States four per cent bonds.    (Roper on Legacies, 482, 748, 749, 750; *Jackson* v. *Van Buren*, 13 Johns. 525; 2 Story's Eq. Juris. 482.)    If the defendant had elected to take one-third of the appraised value of the testator's estate, the interest, income, profits and earnings may have been appro-

priate terms, as the testator may have left personal property that yielded profits and earnings; and if these words were applied to United States bonds, they would not in that case entitle her to the enhanced value of those bonds or the difference between the price paid for them and the amount at which they were sold, because such enhanced value is not interest, income, profits or earnings, but an accretion to the capital. (*Townsend* v. *U. S. T. Co.*, 3 Redf. 320; *Whitney* v. *Phœnix*, 4 id. 180; *In re Gerry*, 103 N. Y. 445.) Assuming again that the $30,000 had been invested in the United States bonds, or they had been set apart for Mrs. Benner, both of the executors and trustees should have appealed. (*Thatcher* v. *Candee*, 3 Keyes, 157; 33 How. Pr. 145; *Scranton* v. *F. & M. Bank*, 33 Barb. 527; 24 N. Y. 426; *Bockes* v. *Hathorn*, 78 id. 222.)

Earl, J. On the 9th day of July, 1876, Hiram Benner, an inhabitant of the city of New York, died, leaving real and personal property of the value of about $100,000. He left a will which was subsequently admitted to probate, in which he devised and bequeathed all his estate to his executors and trustees in trust as follows: To set apart for the occupation of his widow and minor children a house with the furniture therein; to set apart and invest sufficient of his estate to yield and pay an annual income of $500 to his mother, Hannah Benner, during her life; to set apart and invest $30,000, or one-third of the appraised value of his personal estate, as his wife might elect in writing, and pay over to her the "income, interest, profits and earnings thereof" during her life half yearly; to divide the residue of his whole estate, real and personal, into six equal parts, and pay the income of one-sixth to his son Charles H. Benner during his natural life, and upon his death to divide that one-sixth among his lawful issue him surviving, *per stripes* and not *per capita;* to pay the income of another sixth part to his daughter Frances Duclos during her natural life, and upon her death to divide that share among her issue in the same way; to pay to his wife for the support, maintenance and education

of his daughter Ella Benner the income of another sixth part during her minority, and upon her attaining the age of 21 years, or upon her marriage to pay over to her that share ; and there was a similar provision as to each of his daughters Ida and Mary Benner. His executors and trustees were also directed to pay to his son-in-law, Frank M. Bonta, for the support and education of his grandson, Hiram Benner Bonta, the income of another sixth part during his minority, and upon his attaining the age of twenty-one years, to pay to him his share of the estate. He then provided in the third clause of his will that upon the death of his wife the share of his estate set apart for her use should become a part of his residuary estate and be disposed of among his children and grandchild respectively and their issue " in the same manner as above provided, namely, one-sixth part to each of my said children, Ella, Ida and Mary, and their representatives, and the income of one-sixth part to my son, Charles H. Benner, and my daughter, Frances Duclos, respectively, and my grandson, Hiram Benner Bonta, during his minority, with reversion to the lawful issue of each of them surviving; and upon the death of my said mother, the share or portion set apart for her use and benefit shall also form a part of my residuary estate, and be disposed of in like manner."

In the fifth clause he provided as follows : · " Should any of my children die before me leaving lawful issues, such issue shall take and receive the principal of the share which the parent would have received, or would have had the benefit of ; but should either of my children die without leaving lawful issue him or her surviving, the share which would have gone to, or been held for the benefit of the one so dying, shall belong to and be divided among my surviving children, and my said grandson and the lawful issue of those who shall have died, in the same manner as hereinbefore provided. Should my said grandson die leaving lawful issue him surviving, such issue shall take and receive the principal of the share which he would have received or would have had the benefit of, but should he die without leaving lawful issue, him surviving, the

share which would have gone to or been held for his benefit, shall belong to and be divided among my surviving children and the lawful issue of those who shall have died in the same manner as hereinbefore provided."

He appointed his wife and Frank M. Bonta executors and trustees, and his wife guardian of the person and estate of his three minor children, and they took upon themselves the trusts and duties under the will.

This action was commenced in August, 1889, by the plaintiffs, who are the children of the testator by his first marriage, against Mary S. Benner and Frank M. Bonta, individually and as trustees under the will, and also against the three minor daughters of the testator and all the living children of the plaintiffs, who were also minors, for an accounting by the executors and trustees, and the determination of the rights of the parties under the will. Answers were interposed by all the defendants, and the action was brought to trial at a Special Term, and, after hearing the evidence, the trial judge, among other facts, found that Hannah Benner, the mother of the testator, died on the 13th day of February, 1882, and Hiram Benner Bonta, the grandson of the testator, died on the 21st day of May, 1888, without issue; that on the 5th day of November, 1878, the trustees bought, with the money belonging to the estate of the testator, $40,000 of United States four per cent bonds at one-fourth of one per cent premium, which premium, amounting to $100, was charged to the expense account and paid out of the moneys belonging to the estate, and that the trustees, on the 28th day of November, 1888, sold these bonds for the sum of $51,287.50. being $11,187.50 in excess of the amount paid for them.

One of the matters in controversy between the parties is as to what should be done with the sum thus realized upon the sale of the bonds in excess of their cost. Mrs. Benner claims that $8,465.62 of that sum belongs to her, as the profit from the $30,000 invested for her under the will. This claim was contested by the plaintiffs upon the trial and was disallowed by the trial judge. None of the evidence given upon the

trial is in this record, and the appeal is based solely upon the findings of fact and of law and the exceptions thereto contained in the record.

It is not necessary to determine what the precise rights of the widow would have been in this increment $8,465.62 if the $30,000 of government bonds had actually been set apart for her under the will, or if $30,000 in money had been invested for her in those bonds under the will. Then she would have been in a position to make the claim that she is entitled to this increment, and facts would have been before the court upon which her claim could be determined. But there is no finding, and there is no inference from the facts found that $30,000 of the bonds were at the time they were purchased set apart under the will for her benefit.  On the contrary she did not make any election to have $30,000 set apart and invested for her under the will until December 8, 1884, and the necessary inference is that prior to that time no sum had been set apart and invested for her. Indeed she could not have had bonds of the par value of $30,000 set apart for her at any time, as they were always worth more than that sum. Even if she elected in 1884 to have her $30,000 under the will set apart and invested in these bonds, it does not appear what, if any, was the increase in their value after that date. The trial judge found that the trustees did not at any time, as directed by the will, divide the rest and residue of the estate into six equal parts, and the inference is that the whole estate was kept together. Suppose these bonds had been lost, or had depreciated in value, or had in any way become worthless, it is very clear that the loss could not upon the facts found in this record have been cast upon the widow.

The fact that she always took to herself annually the interest at four per cent upon $30,000 — the same interest which the bonds bore — does not furnish any reliable evidence that she elected when the bonds were purchased to treat them to the amount of $30,000, as set apart for her. For aught that appears in this record that was all the interest she received,

and all that was produced by the estate. There is no finding in tne case that the interest she took annually was actually the interest received from these bonds. Her case is not aided by the fact that she made her election to have the $30,000, set apart for her in 1884. That election could not relate back. Having omitted to make any election prior to that time and either having previously set apart for herself some other $30,000, or not having previously set apart anything, and thus having omitted to act under the will as to the $30,000, she cannot now claim upon any equitable principles that that election should relate back to the time when the bonds were purchased. She had at all times the entire management and control of the estate, was free to act in reference thereto, and was responsible for what was done or omitted to be done.

There was therefore no basis whatever for the claim that the sum in controversy was the profit or income of any portion of the estate set apart or invested under the will for the benefit of the widow, and the trial judge did not err in denying her claim.

She appealed from that portion of the judgment which disallowed her claim to the $8,465.62, and the General Term held that bonds to the amount of $30,000 should be regarded as having been set apart for her, and treated the sum of $8,465.62 as an increment or accretion to the fund invested for her, and decided that the whole proceeds received from the sale of $30,000 of bonds should be invested for her benefit so that she would receive the annual interest upon the increment as well as upon the $30,000, and it modified the judgment of the Special Term in this respect. For the reasons we have stated we think the General Term erred in this modification.

It is further contended by the widow that even if the General Term erred in its view of the law applicable to her claim, as she has received only four per cent upon $30,000, she should in any event be allowed the difference between that rate and the legal rate of interest. Such an allowance would be in contravention of the will, and there is no basis for it in

the absence of any finding that more than four per cent was earned. She had the management of the estate, and if she did not or could not make it earn more than four per cent she cannot equitably claim more. Upon the record as it now appears, however much we might desire to favor the widow, we find no ground upon which we can uphold the decision of the General Term.

The trial judge found that upon the death of Hiram Benner Bonta the share of the estate to be set apart for him was to be divided into five equal parts, and that two of those parts should be paid to these plaintiffs absolutely, and the other three shares to the daughters Ella, Ida and Mary, who had become of age. The General Term held that in making that disposition of the share set apart for Hiram Benner Bonta the trial judge erred, and that the two-fifths thereof, instead of being paid absolutely to the plaintiffs should have passed to the trustees in trust for the plaintiffs, like their other two-sixths shares, as provided in the will. In this we think the General Term erred, and in the disposition of that share we agree with the Special Term. The particular clause to be construed is as follows: "Should he, my grandson, die without leaving lawful issue him surviving, the share which would have gone to or been held for his benefit, shall belong to and be divided among my surviving children and the lawful issue of those who shall have died, in the same manner as hereinbefore provided."

The General Term held that the words "in the same manner as hereinbefore provided," meant that the shares of the plaintiffs should be taken and held by the trustees in trust for them and their issue, as provided in the will. We do not think that that is the natural construction of those words when read in connection with all the provisions of the will and that it does manifest violence to the intention of the testator. He had ordered his estate to be divided into six shares and that the one-sixth for each of the plaintiffs should be held by the trustees and the income thereof paid to them during their lives and that at death those shares should go to their

lawful issue *per stirpes* and not *per capita*. He had provided in the third clause of his will that upon the death of his wife the $30,000 to be held in trust for her should become part of his residuary estate and be disposed of for the benefit of his children, grandchild and their issue in the same manner as provided in reference to each sixth part of his estate, to wit : One-sixth part to each of his children, Ella, Ida and Mary, and their representatives, and the income of one-sixth part each to his son and daughter, the plaintiffs, during their lives, and to Hiram Benner Bonta during his minority with reversion to the lawful issue of each of them surviving; and upon the death of his mother the portion set apart to produce her income was to be divided in the same manner. So, as to the sum set apart for the mother and the widow, according to the present contention of the trustees, there would be in portions of the estate separate trusts during the life of the mother and the life of the widow, and then a trust as to one sixth thereof for the life of Hiram Benner Bonta, and a further trust of one-fifth of his share during the lives of each one of these plaintiffs; and thus there would be an illegal suspension of the absolute ownership of that portion of the estate for more than two lives; and it was to avoid such a complication and contingency that in the clause we are to construe it was provided that, upon the death of Hiram Benner Bonta, without issue, the share set apart for him "should belong to and be divided among" the surviving children. That is not appropriate language, if the shares of these plaintiffs were to go into the hands of trustees, to be held by them in trust for the plaintiffs, and then to be paid to their issue after their deaths. The direction is that it shall "belong to and be divided among" the surviving children. That language is so plain and explicit and the purpose of it so obvious when all the will is read, that we think it cannot receive any other construction than that given to it at the Special Term. The words "in the same manner as hereinbefore provided" may have their full significance by ·referring them to the division among issue *per stirpes*, and not *per capita*.

Without dwelling further upon the provisions of the will and fortifying the conclusions we have reached by any further criticism of its language, we are of the opinion that the will was properly construed at the Special Term.

The judgment of the General Term should be reversed, and that of the Special Term affirmed, without costs to the defendants and with costs to the plaintiffs, to be paid out of the estate other than the $30,000 set apart under the will for the widow.

All concur.

Judgment accordingly.