(85 Hun, 572.)

## In re BIDEN'S ESTATE.

### In re PROCTOR.

(Supreme Court, General Term, Fifth Department. April 12, 1895.)

WILLS—INCOME AND PRINCIPAL—APPRECIATION OF INVESTMENT.
  A bequest to testator's widow of "the interest, income, and profits of the sum of six thousand dollars," which the will provides the executors "shall keep invested safely and securely * * * in good approved securities as long as my wife shall be entitled to the interest thereof," does not entitle the widow's personal representatives to the premiums accruing on the securities in which the money is invested.

Appeal from surrogate's court, Monroe county.

Judicial settlement of the accounts of Emily C. Proctor, as administratrix of John Biden, deceased. From the decree settling the accounts, Eliza E. Smith and Maud Smith, as executrices of Emma Biden, deceased, appeal. Affirmed.

Argued before DWIGHT, P. J., and LEWIS and BRADLEY, JJ.

Waldo G. Morse, for appellants.

W. Martin Jones, for respondent.

BRADLEY, J. By his will, John Biden, deceased, gave to Emma Biden, during the period she should remain his widow, "the interest, income, and profits of the sum of six thousand dollars, which interest or income shall be payable to her at the time the same accrues on the investment of said six thousand dollars." The executors of his will invested such sum of $6,000 in Rochester city water bonds, upon which the widow received the interest up to January 1, 1894, at the rate of 7 per cent. per annum. She died February 11, 1894. At that time the bonds were worth a premium of 27 per cent., and were afterwards sold by the administratrix with his will annexed for $7,620. The surrogate determined that the representatives of the widow, deceased, were not entitled to the premium received upon the sale of the bonds. From the portion of the decree to that effect this appeal is taken. They were allowed interest upon the bonds from January 1, 1894, to the time of her death. The controversy arises upon the use of the word "profits,"—the purpose intended by it in the connection in which it appears in the will, and in its relation to the fund invested. The income of the fund evidently was intended for the beneficial enjoyment of Mrs. Biden while she should remain the widow of the testator. It is urged that something more was intended by the testator,

and in support of that view reference is made to the provision of the will that the "interest or income shall be payable to her when it accrues on the investment," and to the fact that in such direction the word "profits" is omitted.  There is, however, nothing in the purport of the will manifesting an intent that profits, as distinguished from current income, should become part of her estate after her death.  The use of the expression "interest or income" instead of "interest and income," as first used in the will, and the subsequent provision "that my executors shall keep invested safely and securely the said six thousand dollars in good approved securities as long as my wife shall be entitled to the interest thereof," tend to show that the terms "interest" and "income" are synonymously used, and that the design was that the product of the fund should and would be interest; and while the interest or income, as well as increased value of the securities, may be treated as "profit" that term, in common parlance, is the pecuniary advantage resulting from dealing or trafficking in property.  It is evident that the testator did not intend that the fund should be used in that way, because he directed that it should be invested in securities as long as Mrs. Biden should remain his widow, and that his executors should "have the care, custody, and control of the same during that time."  Although, on the termination of the legacy, the testator bequeathed "three-fourths of said six thousand dollars" in one direction, and one-fourth of the same in another, this does not seem to have any significance on the question under consideration as the will contains a residuary clause.  It is very likely that no accretion to the fund was contemplated when the will was made.  The purpose was the investment of it in interest-bearing securities.  The interest would be a fixed rate upon a definite sum payable at some time in satisfaction of the obligation.  The rate of interest on the bonds in question was so large, and the death of the legatee so long before their maturity, that they then commanded a premium in the market.  It had been higher, and would continue to diminish until the value of the securities settled to par.  It could not be ascertained what, if any, the accretion would be until the termination of the widow's relation as legatee; and it is difficult to see in the will any indication of a purpose that such increase in value, to be ascertained after and as of the time of her decease, should be treated as profits, and go to her personal representatives.  The legacy in view by the testator was evidently intended for the use and enjoyment of the widow.  It is not seen that by the terms of the will this accretion, as of the time of the death of the widow, was a situation or product contemplated by the testator or intended to be covered by the use of the word "profits," nor does such seem to be the fair intendment of the words "interest, income, and profits," applicable as they were to the investment of a fund in securities bearing a fixed rate of interest payable to the legatee as it accrued.  The more reasonable view of the words of that expression is that they were tautological.  And, upon the question of their application to the increased value of the fund, this case comes within the principle of cases heretofore determined by the

courts of this state. In re Gerry, 103 N. Y. 445, 9 N. E. 235; In re Clark, 62 Hun, 275, 17 N. Y. Supp. 93; Duclos v. Benner, 62 Hun, 428, 17 N. Y. Supp. 168; Id., 136 N. Y. 560, 32 N. E. 1002; Cross v. Trust Co., 75 Hun, 533, 27 N. Y. Supp. 495; In re Vedder (Sup.) 17 N. Y. Supp. 93. If such had been the purpose of the testator, he could, by some expression to that effect in the will, have included a bequest of any increase in value of the capital which might arise from the investment. But the principal sum of the bonds belonged to the estate of the testator, and there is nothing in the will to take it out of the general rule on the subject that the increment from natural causes is regarded as a part of the capital or principal fund, and goes to the remainder-man or residuary legatees. The decree of the surrogate should be affirmed.

All concur.