In the Matter of the Estate of THEODORE G. EGER, Deceased.

Surrogate's Court, Kings County, January 24, 1931.

* Order entered December 30, 1930, sustaining writ of habeas corpus upon the merits in favor of the relator.— [REP.

*Vito F. Lanza,* for the petitioners.

*Harvey O. Dobson,* attorney in fact for Alice Gieseler, legatee, and Harvey O. Dobson and Minnie K. Luhrsen, as executors of the last will and testament of Pauline Eger.

WINGATE, S. In connection with the petition for the final judicial settlement of the accounts of the trustees in this proceeding, construction has been prayed of article " Sixth " of the will, which reads as follows: " I give, devise and bequeath unto my executors hereinafter named, the sum of Fifty thousand ($50,000) dollars, in trust, nevertheless, to safely and conservatively invest the same so that it shall yield a regular interest and income, and I direct that all the profits, interest and income of the said fund as the same shall be received by my executors and trustees, shall, during her life, be paid by my said trustees to my said wife, Pauline Eger."

This will was admitted to probate on December 23, 1919, and thereafter the principal fund directed in the " Sixth " item was set up in the hands of the trustees for Pauline Eger, the wife of the testator. Mrs. Eger died on April 18, 1930, and the present application contemplates the distribution of the remainder.

The immediate question which concerns the proper meaning of the word " profits " in the indicated item of the will, is raised by reason of the fact that during the continuance of the trust, the trustees sold certain securities in which the principal fund was invested, at a net profit of $4,711.43. The practical question for determination is, therefore, whether under the terms of this item of the will, this sum of between $4,000 and $5,000 shall be paid over to the estate of the life tenant, or shall be distributed among the remaindermen of the trust who are named in the " Eighth " item of testator's will.

It is, of course, a familiar principle of law that a gift of the " rents and profits " of real property is construable merely as a gift of the income which is to be derived from such property in its ordinary normal use. Many cases to that effect might be cited. Two early applications of the principle will suffice.

In *People* v. *Van Rensselaer* (8 Barb. 189) the court says (at p. 200): " The term ' rents and profits ' is well understood. No

doubt one may receive the profits of land by his own occupancy. So 'or' and 'and' are sometimes synonymous. * * * They often mean the same thing; though rent is a tribute which issues out of land, as a part of its actual or supposed profits; and the word 'profits,' means yearly 'profits.'"

In *Delaney* v. *Van Aulen* (84 N. Y. 16) the question presented was as to the proper construction of a testamentary direction to erect a trust fund and "to apply said rents and profits of real estate, and interest or income of personal estate, to the use of my husband, William L. Kirby, during his natural life." Respecting this direction the court said (at p. 23): "Here is not a direction to pay a fixed sum at a specified time, and without delay, but to devote that which is received, be it more or less, to the use of the beneficiary. Clearly this is not given as an annuity. It is given as the current avails of a fund. It does not import that a sum, at all events, is annually to be paid out of the estate, but only that the profits of a capital sum, that is to be set apart, are to be so paid. It is manifestly impossible ever to say, so long as the trust property yields any profits or income, that the husband is to have anything, more or less, than the sum annually yielded, or to have it from any other source than from the annual yield."

In the present case the confusion which has resulted from the terms employed is by reason of the use of the word "profits" without the usual association therewith of the word "rents."

In spite of this omission it would, under ordinary circumstances, seem apparent that the draftsman of the will who has, in the instrument, given considerable demonstration of his familiarity with ordinary words of art, had in mind the same signification of the word "profits," which would inevitably have been connoted had the word "rents" been joined with it, since the second donative word in the item is "devise."

However this may be, it has repeatedly been determined that in the ordinary case a testator does not contemplate that his trustees will indulge in speculation with the investments composing the principal fund, in consequence of which strong evidence is required to demonstrate that any enhancement in value of the trust *res* is not to be added to and become a part of such principal fund (*Matter of Gerry*, 103 N. Y. 445; *Matter of Stevens*, 46 Misc. 623, 636, 637; *Matter of Proctor*, 85 Hun, 572, 573), it further following as a natural sequence that enhancement in value of the trust *res* is not "profit" within the usual meaning of the phrase. (*Cross* v. *L. I. & L. T. Co.*, 75 Hun, 533, 534.)

It must be apparent, under phraseology similar to that found in the case at bar, that a determination that the life tenant was

entitled to receive the realized enhancement in value upon the securities in which the principal fund was invested would necessarily result in one of two alternatives, namely, either the trustees would have it in their power arbitrarily to defeat this right of the life tenant by refusing to sell, or the life tenant would have the right to compel the trustees in effect to speculate with the principal funds of the trust by requiring their sale of items of investment which, from time to time, showed increase in market value over their cost of acquisition.

This point is touched upon in the First Department, decision of *Linsly* v. *Bogert* (87 Hun, 137, 138) in the following language: " If the tenant for life as a matter of right is entitled, as is claimed by the appellant, to the increase resulting from the rise in price of the securities in which the trust fund was invested, then it would seem to be a right existing in the life tenant at any time when such premiums existed to compel a sale of the security in which such trust fund was invested in order that she might realize such increase. It is apparent that no such right exists in the life tenant. Such a power would enable the life tenant to compel the trustees to speculate in securities and change investment at her pleasure, and thus deprive the trustees of the ordinary powers which are supposed to be vested in them."

A further consequence clearly not within the contemplation of the creator of the trust in the absence of express language, is that the realization upon so-called profits made from time to time by the trustees in dealings with the principal, if paid over as acquired, might well result in the complete destruction of the principal fund, in the absence of any requirement in the terms of the trust that similar losses should be made good by the life beneficiary. This is pointed out in the First Department decision in *Stewart* v. *Phelps* (71 App. Div. 91, at p. 96): " In investments of this character there is always a possibility of loss as well as gain, and it is contrary to that purpose for which a trust fund is created to allow an increase in the value of the securities in which the fund is invested to be paid to the living beneficiary, where no provision is made for such a repayment in the event of any loss which may be sustained by reason of unfortunate investments. It cannot be claimed that, had there been a decrease in the value of the securities turned over by the executors to the trustees as part of this trust estate, the life beneficiary would be liable to make good to the estate a loss; nor could it be claimed that, had the trustees made investments that turned out disastrously to this estate, the life beneficiary would be bound to make good a depreciation in the value of the securities in which the fund had been invested. That the investments of

this estate have shown a remarkable increase in value, and that the trustees by wise and judicious management have increased [97] the value of the estate by reason of investments that they have made, would not justify the court, without the explicit direction of the testator, in decreeing that such an increase be paid to the living beneficiary, when the future may show a depreciation in the value of other securities in which the trust estate is invested and which would deplete the trust which it was evidently the intention of the testator should be preserved for the benefit of his daughter during her life, and for the benefit of her children and the other members of his family after her death." The general subject is ably discussed in the opinion of the referee appointed in *Linsley* v. *Bogert,* which opinion is expressly approved by the General Term in 87 Hun, 137 (*supra*), and the general discussion of the subject by the referee whose report is given in full in 33 New York Supplement, 975, is particularly illuminating. (See pp. 981, 982.)

On reason and authority, therefore, it would seem to be the correct view that, in the absence of testamentary language expressly indicating the contrary, the addition of the word " profits " to such words as " interest " and " income," as in the case at bar, is " only due to the lawyer-like fondness for using the several words where one is sufficient." (*Matter of Clark,* 62 Hun, 275, 282.)

This point is developed with particular clearness in *Matter of Proctor* (85 Hun, 572) in which the direction was for the receipt by the widow of " the interest, income and profits " during her widowhood. The court says (at p. 574): " The legacy in view by the testator was evidently intended for the use and enjoyment of the widow. It is not seen that by the terms of the will this accretion as of the time of the death of the widow was a situation or product contemplated by the testator or intended to be covered by the use of the word profits, nor does such seem to be the fair intendment of the words ' interest, income and profits,' applicable as they were to the investment of a fund in securities bearing a fixed rate of interest payable to the legatee as it accrued. The more reasonable view of the words of that expression is that they were tautological. And upon the question of their application to the increased value of the fund, this case comes within the principle of cases heretofore determined by the courts of this State."

All cases which have been found have uniformly held that the addition of the word " profits " does not extend the gift beyond that which would be connoted by the use of the word " income " alone. (*Matter of Clark,* 62 Hun, 275, 282; *Cross* v. *L. I. L. & T. Co.,* 75 id. 533, 534; *Matter of Stevens,* 46 Misc. 623, 636, 637; *Stewart* v. *Phelps,* 71 App. Div. 91, 96; *Matter of Proctor,* 85 Hun,

572; *Linsley* v. *Bogert,* 87 id. 137, 138; *Matter of Vedder,* 15 N. Y. Supp. 798, 804, 805.) (See, also, *Robertson* v. *De Brulatour,* 188 N. Y. 301, 305, 306.)

An additional indication of the correctness of the rule contained in these cases arises from the application of the familiar maxim, *noscitur a sociis,* which, as noted in *Matter of Hermance* (71 N. Y. 481, 487), is " so frequently applied in the construction of deeds, wills and other written instruments, as well as of statutes," and concerning which the Appellate Division of this department has said that there is " no more useful canon of interpretation." (*Moubray* v. *G. & M. Improvement Company,* 178 App. Div. 737, 740.) This principle is stated in Broom's Legal Maxims to be that " the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it."

For the reasons above assigned, the court, therefore, is of the opinion that the proper construction of article " Sixth " of this will is to give to the widow merely the ordinary annual income derived from the usual employment of the principal funds of the trust, and that neither she nor her estate are entitled to any enhancement in value in the principal funds of the trust, whether realized upon during her life or after her death.

It will, therefore, result that the additional sum of $4,711.43 which came into the hands of the trustees upon the sale of the securities in the trust fund is to be distributed among the remaindermen of the trust.

Enter decree on notice accordingly.