George E. Severson, S.
The litigation in this executor’s final account principally involves the proper allocation of stock distributions made during the existence of a legal life estate either to principal or income or both.
Formal objections have been filed to the account by the estate of the now deceased legal life tenant. The appearing parties have waived a trial and have filed an agreed statement of facts. Additionally certain other matters were stipulated on the record in open court as to the court’s taking notice of matters of record in this court and copies of income tax returns submitted by the attorney for the estate.
The following facts are agreed upon and are not disputed. Martin Smith died testate in this county on February 4, 1932. His last will and testament, dated January 30, 1932 was admitted to probate in this court on May 19, 1932 and letters testamentary were issued on the same date to De Etta May Smith, widow and life tenant, and to Ralph W. Smith, as cofiduciaries.
The pertinent paragraphs of the will are as follows:
”14. I give and bequeath to my wife, De Etta May Smith, the use, rents, income and profits of all the rest, residue and remainder of all my property, both real and personal, of every name and nature, for and during her natural life.
”15. After the death of my said wife, De Etta May Smith, I direct that my said residuary estate shall be divided into three equal parts; and I give, devise and bequeath one of the said parts to my brother, Willard D.‘ Smith, one of the said parts to my sister, Anna Mae Starr, and the third part to be divided into equal portions among such of the children of my deceased brother, Lauren Smith, as shall be living at the time of the death of my said wife.”
There are no questions raised as to the identity of remainder persons or the nature of their interest in the remainder.
At the time of the filing of the petition and the issuance of the citation in this proceeding, no steps had been taken in the estate of the deceased life tenant, De Etta May Smith, so that her distributees, known and possible unknowns, were duly *871 cited in this proceeding and a guardian ad litem appointed for the unknowns. Letters testamentary in the estate of the deceased life tenant were later issued here on October 24, 1974 upon the probate of her will on the same date. Necessarily, there is no further need for the guardian ad litem here. The executrix appointed in her estate appears in this proceeding and filed the objections to the account.
Although testator died in 1932, there was no formal accounting by the executors prior to this proceeding which was instituted September 19, 1974.
First must be considered the meaning of the word "profits” used by the testator. There is a long line of cases holding that the use of the word "profit” in conjunction with one or more words such as "income”, "rents”, "issue”, "use” and the like should generate a search for the intent of the testator and that the use of such words, without more, indicates an intent that these words in combination mean that the life tenant is entitled to income only. (Matter of Clark, 62 Hun 275; Cross v Long Island Loan & Trust Co., 75 Hun 533; Matter of Gerry, 103 NY 445; Stewart v Phelps, 71 App Div 91, affd 173 NY 621; Matter of Baxter, 164 Misc 183, affd 250 App Div 701, affd 275 NY 614; Matter of Stevens, 46 Misc 623; Matter of Eger, 139 Misc 59; Matter of Sherman, 154 Misc 289; Matter of Werbelovsky, 192 Misc 621; Matter of Harned, 99 NYS 2d 407.) In view of these principles, nothing further being found in this will as an expression of intent, by reference to "use, rents, income and profits” the testator intended that his wife receive to her use whatever was ordinary income on the fund in which she was given a legal life estate. In this regard, it is to be noted that the will in question was drawn by a firm of experienced attorneys, both now deceased who must, or should, have been aware of these holdings.
The stock certificates subject to the life estate were deposited by the executors with the county treasurer to reduce the amount of their bond as such executors. Only the securities involved in this litigation will be mentioned herein.
The major dispute in this estate involves 340 shares of the common stock of General Electric Company owned by testator at the time of his death in 1932. Also to be determined.is the application of shares of RCA common stock distributed by the General Electric Company to its shareholders shortly after the death of testator.
Considering first the General Electric common stock, 340
*872 shares were set apart for the benefit of the life estate. These shares remained in the custody of the county treasurer until they were released by court order dated November 29, 1972, for the purpose of liquidation after the death of the life tenant. At the time they were released the original 340 shares had increased by General Electric Company action to 2,040 shares. The market value grew from $6,630 at the date of death to $144,325, the date of sale. The increase was caused by an issue of 3 shares for 1 in 1954, and a further issue of 2 shares for 1 in 1971. These issues by the company precipitate the legal argument as to the manner of distribution of these shares between the estate of the life tenant on the one hand and the remainder persons on the other. The appearing remainder persons in their argument and brief ask the court to apply the provisions of the Principal and Income Act of 1965 (former Personal Property Law, § 27-a et seq.) to these issues of stock arguing that since both increases amount to more than 6% of the existing shares at the time of the increase in the number of shares, that all the increase belongs to the principal and therefore the proceeds should be distributed to the remainder persons. The attorneys for the estate of the deceased life tenant urge that V12 of the stock issued in 1954 be allocated to income pursuant to the Fosdick rule (Matter of Fosdick, 4 NY2d 646) discussed later.
Much has been said and written about stock distributions, stock splits, stock dividends and the like where a corporation for some reason or another would embark on a financial overhaul of its books resulting in a gain in the number of shares held by its stockholders. Due to increasing complication of financial structures and holdings of the corporations in question the problems presented to the courts in these cases became more and more complex. The solutions urged on the courts and sought by the courts in litigation involving these problems of apportionment involved many complex and burdensome formulas as to whether the distribution involved corporate earnings, actual or deferred, or capital or a combination of both. The rules have changed over the years by reason of policy approved either by decisions of the Court of Appeals or by legislative enactment. It is not necessary to outline this development here. This is traced in the Practice Commentary by Professor Samual Hoffman following EPTL 11-2.1 (McKinney’s Con Laws of NY, Book 17B, EPTL 11-2.1, p 126).
*873 To apply the right rule to the appropriate distribution it is necessary to determine the date of the instrument, the effective dates of any applicable legislation, the impact of decisional law upon the dates involved and the language of the instrument creating the trust or estate. Reference to the intent or instructions of the testator or settlor with regard to the increase in holdings in a corporation must also be considered. A further problem in this particular case is whether all of the foregoing apply to a legal life estate as distinguished from a trust. This court holds that the will created a legal life estate and that the same rules should be applied in situations involving legal life estates as are applied in trusts, for reasons hereinafter expressed.
The 1971 distribution of additional stock by the General Electric Company will be considered first. This will is dated January 30, 1932. EPTL 11-2.1 (from 1965-1967 known as Personal Property Law, §§ 27-a-27-q) was enacted by chapter 952 of the Laws of 1966, effective September 1, 1967. Subsequent minor amendments did not affect the statute’s application to the questions raised in this case. This section provides in subdivision (e) as follows:
"(e) Distributions of corporations or associations.
"(1) Notwithstanding the provisions of this paragraph, a will, deed or other instrument which creates or declares a trust may provide with respect to all matters covered by this section, and direct the manner of ascertaining income and principal and the apportionment thereof or grant discretion to the trustee or another person to do so, and such provision or direction, where otherwise not contrary to law, controls.
"(2) A distribution by a corporation or association made to a trustee in the shares of the distributing corporation or association held in such trust, whether in the form of a stock split or a stock dividend, at the rate of six per cent or less of the shares of such corporation or association upon which the distribution is made, is income. Any such distribution at a greater rate is principal.”
The instrument in question contains no direction or rules as to stock dividends or distribution, so the provisions of EPTL 11-2.1 (subd [e], par [3]) relating to any such rules or directions do not apply here. Additionally, no question was presented by any of the parties with reference to the applicability of the remaining paragraphs (3) through (12) of EPTL 11-2.1 (subd [e]), but the provisions of paragraph (13) are very important.
*874 "(13) Subparagraphs (1) to (6) inclusive and (8) to (11) inclusive apply to any trust, whether created or declared before, on or after the effective date hereof, except that subparagraphs (1) through (11) do not apply to any distribution described in this paragraph which accrued prior to such effective date, and subparagraph (7) applies to trusts created on and after its effective date and to the wills of persons dying on and after its effective date.” (EPTL 11-2.1, subd [e], par [13].)
Thus since the provisions quoted above are expressly made retroactive to any trust created prior to the effective date of the statute (to which no question was raised) and expressly exclude distributions made prior to its effective date, a holding is mandated by statute here that the statute applies to the 1971 distribution by the General Electric Company, but is not applicable to the share distributions made in 1954. Accordingly, since the 1971 distribution was 2 for 1, it obviously exceeds the 6% rule mandated by EPTL 11-2.1 (subd [e], par [2]). I hold therefore that this distribution must be allocated in its entirety to principal by statutory mandate.
The same result must be reached if the provisions of section 17-a of the Personal Property Law (added by L 1922, ch 452, § 2; amd by L 1926, ch 843) apply. This section reads as follows: "§ 17-a. Stock dividends. Unless otherwise provided in a will, deed or other instrument, which shall hereafter be executed and shall create or declare a trust, any dividend which shall be payable in the stock of the corporation or association declaring or authorizing such dividend and which shall be declared or authorized hereafter in respect of any stock of such corporation composing, in whole or in part, the principal of such trust, shall be principal and not income of such trust. The addition of any such stock dividend to the principal of such trust, as above provided, shall not be deemed an accumulation of income within the meaning of this article.”
Again, this instrument was dated and executed January 30, 1932 and probated May 19, 1932. The section (Personal Property Law, § 17-a) was in effect until repealed by sections 27-a through 27-q of the Personal Property Law, which were repealed by EPTL 14-1.1, effective September 1, 1967 on which date were substituted the provisions of EPTL 11-2.1 discussed above. As already indicated the will here makes no other direction with respect to dividends so that section 17-a applies *875 mandating a holding that the 3-1 distribution in 1954 is principal and not income. As stated by the Court of Appeals in Matter of Ryan (294 NY 85, 99), with reference to section 17-a of the Personal Property Law: "In plain language the Legislature provided that ’any dividend which shall be payable in the stock of the corporation * * * shall be principal * * In accordance with that mandate the * * * dividends payable in stock must be allocated to principal”. (See Matter of Tracy, 33 Misc 2d 719.)
Cases which modify the statutory rule by express provision in the will or other instrument as permitted by the statute are not considered, there being no such direction in this will (e.g., Matter of Matthews, 280 App Div 23; Matter of Tingley, 24 Misc 2d 985; Matter of Fosdick, 4 NY2d 646, supra). One of these cases, Fosdick, is relied on by the objecting estate of the deceased life tenant insofar as the 1954 distribution is concerned. That case involved the same distribution of General Electric stock and held that V12 of the new issue was income and 5/i2 capital. However in Fosdick the court emphasized that express special provision in the trust instrument relating to stock dividends was found making section 17-a of the Personal Property Law inapplicable. We have no such direction in this case so that the Fosdick rule is inapplicable here.
Cases such as Matter of Osborne (209 NY 450) (which was decided in 1913 prior to the legislation on this subject), like Fosdick, looked to the composition of the dividend litigated and its source, capital or earnings, and made an application thereof or an apportionment to principal and income. These cases (but especially Osborne) prompted the Legislature to reconsider the entire problem which resulted in the enactment of EPTL 11-2.1 and are not pertinent to this discussion.
With reference to the common stock in Radio Corporation of America, it appears from the record herein that none was owned by the decedent at the time of his death on February 4, 1932. The account of proceedings discloses that General Electric Company distributed to its stockholders on February 20, 1933 as dividend distributions, shares of the common stock of RCA. Although not applicable to the facts of this case EPTL 11-2.1 (subd [e], par [9]) now provides that a distribution of shares of a corporation other than the distributing corporation is income. A like provision cannot be found in any of the provisions such as section 17-a of article 2 of the Personal Property Law in effect from 1922 through 1965. However, the *876 question has been passed on in our State’s highest court and our case law prior to 1965 indicates that a distribution of shares of a corporation other than the issuing corporation is to be considered income for the life beneficiary and not capital to be held for the remainder persons. (Matter of Rogers, 22 App Div 428, affd 161 NY 108; City Bank Farmers Trust Co. v Ernst, 263 NY 342.) No proof or other evidence was offered to show any reason for a different holding here. Accordingly, the proceeds of the 98 shares of RCA stock sold January 19, 1973 and the 161 shares of RCA stock remaining on hand are to be treated as income and not principal.
With respect to the remaining securities on hand, there is little information in the papers on file or in the agreed stipulation of facts as to exactly what happened to each block of stock held by deceased at the time of his death. The same rules applied to the General Electric Company and RCA stock must apply to this other stock which forms only a small part of the assets here. If there is no change in shares held, they remain capital. Any stock received in a consolidation or merger occurring at any time or any dividend declared prior to 1965 are capital, and any stock dividends declared thereafter are subject to the 6% rule outlined in EPTL 11-2.1.
In dealing with the argument that the statutes cited do not apply to legal life estates by their terms, there is no question but that this will clearly created a legal life estate in the widow with a remainder interest in identified persons or their children should they predecease the life tenant. The attorneys for the estate of the deceased life tenant in their briefs emphasize the existence of a life estate in decedent’s widow and point out that EPTL 11-2.1 does not apply to life estates and also make an assertion that section 17-a of the Personal Property Law likewise is not applicable. These arguments presuppose that there should be a distinction between handling stock splits, stock dividends and the like in litigation involving a legal life estate as against one involving an express trust. It does seem clear that New York State’s version of the Uniform Principal and Income Act, EPTL 11-2.1, was modified prior to its passage so as to apparently exclude life estates. (Third Report, Commission on Estates, NY Legis Doc, 1964, No. 19, p 310; 9C Rohan, NY Civ Prac, par 11-2.1, subd [1], par [c].) It does not necessarily follow that the rule must be different as applied to a legal life estate with reference to stock dividends. Are we to retain the cumbersome *877 tests and proof required in Osborne and pre-Osborne holdings much commented on and often criticized, in situations involving true life estates and apply the newer legislative policy only to true trusts? To do so would be to side-step the attempt to clarify the confusion and the legislative attempt to define more definite standards in the crediting of stock distributions.
The Court of Appeals (Matter of Payne [Bingham], 7 NY2d 1, 8) hinted that possibly the Osborne rule might be reconsidered in a proper case to determine whether it should be repudiated or restricted as done by the courts and Legislatures in other jurisdictions.
Our Court of Appeals has also indicated in some of its older decisions that with respect to principal and income, the legatee for life becomes in effect, " 'trustee of the principal’ ”. (Matter of Hamlin, 141 App Div 318, 330, quoting from Smith v Van Ostrand, 64 NY 278; Matter of Ungrich, 48 App Div 594, affd 166 NY 618; Matter of Reckford, 307 NY 165.) It seems clear, therefore, that the proper rules now to be applied to the rare life estate that may be still in existence regarding the application of the varied provisions of EPTL 11-2.1 and section 17-a of the Personal Property Law, in a proper case, will have to be determined by our Appellate Courts. Insofar as this court is concerned as long as the Legislature has repudiated the Osborne rule it would seem that this declared policy respecting stock distributions in fairness, as applied to the particular facts and issues in this case, ought to apply to legal life estates with respect to the application of stock distributions to income or principal and that is the holding here.
In attempting to apply the rule and apportionment decreed in Matter of Fosdick (4 NY2d 646, supra), a trust case, to this case involving a legal life estate, objectant seems to concede that at least in some respects there are no reasons for different rules between such legal life estates and trusts insofar as income and principal are concerned. If this premise be correct insofar as case law is concerned, there should be equal application to such estates of statutes passed to eliminate the confusion in these trust case holdings and to make possible more equitable distribution of stock dividends between life interests and remainders.
It is significant (but not the decisive point) that in this case the stock certificates were always registered in the name of the estate and deposited with the county treasurer to reduce the amount of the executors’ bond as aforesaid. The life *878 tenant apparently never received possession of the securities in her capacity as a life tenant. The proceeding here is to settle the account of the surviving executor.
The fact pattern here is quite different from that confronting the courts in Osborne. In that case, the instrument predated any statutory enactments. The instrument here postdated the statutory enactments and the narrow issue is whether the public policy expressed in those statutes should govern life estates regarding stock distributions. Subsequent cases following the Osborne rule concerned themselves with applying prestatute decisional law to the facts of those particular cases after expressly holding that the statutes did not apply. The deed of trust in Fosdick also predated the statutes.
There is precedent for applying statutory enactment relating to defined situations to analogous cases. As one example, former section 92 of the Real Property Law applicable by its terms only to real property was held by decision to embrace personal property as well. (Matter of Reed v Browne, 295 NY 184.) It seems therefore that, unless some compelling reason is shown in a particular case, the tests applied to trusts apply under the circumstances of this case to legal life estates. No such compelling reasons exist here.
Certain other questions raised must be decided. A claim against this estate principally for care of the life tenant in a nursing home is dismissed. There was no appearance by the served claimant nor any evidence offered on her behalf. This claim should be asserted against the estate of the deceased life tenant. No provision is made in the will for the invasion of principal for the benefit of the life tenant nor was any application made for such an invasion on a claim of hardship or necessity. Nor is there any provision in this will to support a further claim that this estate is liable for the funeral bill of the deceased life tenant. Since no evidence was offered to support such a claim or authority therefor, this claim must likewise be dismissed.
Since the deceased life beneficiary was also an executrix, her estate shall be credited with one full receiving commission (the principal assets amounting to over $100,000) in the sum of $3,036.55. Since she died after the increase in the size of this estate, her estate should also be credited with receiving commissions on such increases the same as the surviving executor is to receive. Her estate should likewise be credited *879 with a proportionate share of commissions computed on the value of any assets paid out during her lifetime. (SCPA 2307.) The surviving executor shall receive one full paying commission.
Since all parties at the inception of this estate treated the will as creating a legal life estate in that Mrs. Smith received and used all ordinary dividends and the rent from half of the two-family house owned by the decedent at the time of his decease (the other half of which was occupied by Mrs. Smith), no claim has been asserted for any commissions for this income. No question has been raised as to the rents received by the life tenant from the real property mentioned above. For the purpose of this accounting, such rentals should be credited to the account of the life tenant to the time of her death.
The record is not clear in this regard, but if the life tenant collected and used the proceeds of the mortgages and note set up in schedule "A” of the account, her estate’s interest herein should be charged with the balance due on principal as of the testator’s death, she having been entitled to the interest only. Dividends, rents and interest received subsequent to the death of the life tenant should be apportioned to the date of her death with proper credit given to her estate according to the above holdings.
Other minor objections to the account filed by the estate of the deceased life tenant are dismissed as being without substance. One relates to the loss in value on a small number of common stock. Under the above ruling, this stock was principal and no loss was shown as far as the income beneficiary is concerned. None of the remainder persons objected. The other objection relates to payment for services prior to this accounting to a firm of attorneys not presently representing any party in this proceeding. The charges were reasonable. One proceeding was on behalf of the life tenant to determine whether dividends were being withheld and the other to release securities from escrow from the county treasurer’s office for the purpose of exchange for other securities. The fees are properly chargeable to principal since they were rendered for the benefit of the estate.
Attorneys seeking allowances should submit affidavits of services within 10 days after the consideration of which the executor shall supplement his account and submit a decree, on notice, to settle the same in accordance with this decision.