In the Matter of the Estate of SAMUEL GARLAND, Deceased.

Surrogate's Court, Bronx County, May 4, 1936.

*Gifford, Woody, Carter & Hays* [*Raymond M. White* and *Kenneth R. Strickland* of counsel], for the Irving Trust Company, accounting trustee, petitioner.

*Edward R. K. Fiencke,* special guardian for infants Susanna E. Lange and others, respondents.

HENDERSON, S.   There are two questions presented to the court for determination upon this accounting of the surviving corporate trustee: One is for a construction of the will and the other is an objection to the account by the special guardian, representing contingent remaindermen, requesting a surcharge because of the shrinkage of the estate by reason of the alleged negligence of the accounting trustee.

Following the word " Sixth " and preceding subdivision " A," the testator provided a trust for the life of the widow, and upon her death it is to be divided into four equal parts, one for each of his children until such child reaches the age of fifty years, at which time the child receives its share outright.   If the child dies before reaching the stipulated age, the corpus is given to such child's lawful issue.   In default of issue, it is given to the other children of the testator provided they have attained the age of fifty years. If any surviving child is under fifty years of age, his or her share is to be added to the trust for its benefit.   The petitioner trustee suggests that while the provision for adding to the trust set up for the four children is an unlawful suspension of the power of alienation, all the other provisions are valid and should be so construed.   In the event that part of the corpus of any trust is by direction of the will to be added to the principal of another trust, such sum will pass as intestate property.   The special guardian concurs in the view of the petitioner.   The suggested construction is correct and will be adopted by the court.

The facts involved in the objections to the account are not in dispute.   The decedent died on May 8, 1926.   The executors were his widow, Sarah J. Garland, and Arthur Bell, who duly qualified. The executors' account was settled by decree dated November 23, 1928.   The residuary estate was turned over to the two trustees — the widow, who died on June 16, 1933, and the accountant.   The trustees qualified on December 7, 1928.   The greater part of the residuary estate so received were bonds sold by the American Bond and Mortgage Company and owned by the decedent at the time of his death.   The will provided that the trustees might retain such securities owned by the testator at the time of his decease.   The

bonds received and their value as shown in the executor's account were: $7,000 first mortgage bonds of Park Central Apartment Hotel, six and one-half per cent; $4,000 first mortgage gold bonds of 60 University Place Corporation (The Wordsworth), six and one-half per cent; $3,000 first mortgage gold bonds of Yona-Varah Realty Corporation (Sherman Square Apartments), six and one-half per cent; $2,500 first mortgage gold bonds of 136 East Thirty-sixth Street Corporation (Murray Hill Apartments), six and one-half per cent; $4,000 first mortgage sinking fund gold debenture bonds of American Bond and Mortgage Company, six and one-half per cent; $4,500 first mortgage gold bonds of 333 West Eighty-sixth Street Corporation (Franklin Towers), six per cent.

On September 30, 1929, the corporate trustee wrote to its cotrustee in part as follows: "In the trust for you we are carrying six issues which were distributed by the American Bond & Mortgage Co. You will recall that on several occasions in the past we have expressed our feeling that these securities are not of the high grade which we usually like to see in our trust accounts and we are wondering whether, in view of recent developments in the real estate market, particularly in regard to American Bond & Mortgage securities, you would care to have us submit these six issues to our Trust Investment Committee for review and recommendation."

At this time the matter was presented to the trust investment committee of the trust company. They decided that there was no urgency to sell. They requested that Mrs. Garland should request the retention of the bonds in writing, which she did.

On October 6, 1930, the trust company again wrote to the cotrustee in part as follows: "After some discussion on the situation of each issue it was the judgment of the members that all of the above bonds should be sold at this time and it was voted that such recommendation should be made to our co-trustee as soon as possible."

Mrs. Garland requested that the bonds be retained.

On December 20, 1930, the accountant sent another letter to Sarah J. Garland which in part reads: "We suggest the bonds be sold without further delay and if you care you may endorse your approval on copy of this letter which is enclosed for your convenience in replying." She again refused to sell the bonds.

A letter on March 11, 1931, stated in part: "We have written you a number of times, the last of which was under date of December 30, 1930, suggesting the sale of your trust of certain bonds issued by the American Bond & Mortgage Co. You refused your consent to sell below par. We now reiterate our present suggestion that these bonds be sold." She still insisted that the bonds be retained. Subsequent letters of similar tenor brought the same kind of reply from the widow that she wished to keep them.

The decedent believed that these bonds were excellent investments and had admonished Mrs. Garland not to dispose of them. The four children who are the beneficiaries of the secondary trusts apparently desired that the bonds be retained. They have not filed objections to the account and the widow informed the trust officer of the company that the children approved of her refusal to sell. To have insisted on a sale might have been embarrassing in view of the attitude of the family. However, the corporate trustee owed a greater duty to the decedent than to be pleasant to his family. There would have been no necessity for him to have named the trust company as cotrustee had he desired to have his widow control the trust fund. He had the right to expect that his estate would be handled by the corporate trustee with the diligence and the prudence of a reasonable man in the management of his own affairs. Does the conduct of the accountant come up to that standard?

In 1929, when these investments were first considered by the trust investment committee, some doubt existed as to the wisdom of retaining the bonds. As they decided that there was no urgency to sell at that time, the retention of the bonds, in view of the attitude of the cotrustee, was justified.

On October 6, 1930, the situation had changed. At this time the committee reached the conclusion that the bonds should be sold. They so recommended. The corporate trustee seeks to justify its failure to take any action at this time and urges that there existed a mere difference of opinion between cotrustees. The corporate fiduciary reached its conclusion after an especially selected group of men had reviewed the facts. It does not appear that the widow made any investigation or had any experience in business affairs. Her desire to hold the bonds was based on her knowledge that these investments were highly regarded by her husband. Under such circumstances, the corporate fiduciary was under a duty to insist upon a sale. (*Matter of Weston*, 91 N. Y. 502; *Villard* v. *Villard*, 219 id. 482; *Matter of Junkersfeld*, 244 App. Div. 260, 264; *Matter of Richardson*, 149 Misc. 192.) It is urged that the accountant could not act alone and that the bonds could not be sold without the consent of the cotrustee. That is only partly true for the accountant might have petitioned for advice and direction under the provisions of section 215 of the Surrogate's Court Act. Under the circumstances, the failure of the accounting trustee to take some action upon the refusal of the cotrustee to accept its recommendation was negligent. If it had used reasonable diligence, I find that the bonds should have been disposed of by December 20, 1930, and the trustee will be charged with the agreed value of the bonds

as of that date. It will be surcharged with the difference between the amount received and the amount I have found should have been received in those cases where the bonds have been sold or liquidated. It will be surcharged with the value of those bonds it still retains as of December 20, 1930, and upon such payment, may apply such bonds to its own use.

Settle decree.