In the Matter of the Estate of GERTRUDE S. BAXTER, Deceased.

Surrogate's Court, New York County, May 16, 1936.

*Newman & Bisco* [*Leonard G. Bisco* and *William J. Granger* of counsel], for the trustee.

*John P. O'Brien,* special guardian.

*Wilson, Huntington & Lord,* for the Society of New York Hospital.

DELEHANTY, S. In this accounting proceeding the special guardian objects to a claim by the trustee for credit for a loss of capital. The item in question is a $16,000 mortgage which is now listed as of no value. The proof shows that the property covered by the mortgage was originally a multi-family house of a poorer tenement type located in the upper east side district of Manhattan. The building has been demolished pursuant to official order therefor because it became unsafe due to vandalism. The land apparently has a value now of about the total of accumulated and unpaid land taxes. The premises are located close to a public school. There is a possibility of salvage of some amount, perhaps, but in view of the conclusion here reached it is unnecessary to discuss that subject.

The accounting trustee offered a considerable volume of testimony respecting conditions in and about the mortgaged premises long after the mortgage was in default and after conditions had been created in the building which jeopardized the value of the mortgage. If the conditions reported as of that date were conditions of sudden occurrence, the proof respecting them would be entitled to great weight in determining what the court should do respecting the loss claimed by the trustee. The fact is that such proof has little to do with the real issue here. There can be no doubt that after the premises had been abandoned by the owner material damage was soon done to the property. If there had been no fault by the trustee up to that point the negligence of the trustee shown on this record would be excusable at least in part. But the direct cause of this loss is not the happenings of 1932 and later years but rather the neglect by the trustee of its plainly indicated duty to collect this mortgage long antecedent to that date. The history of the

trustee's handling of this mortgage presents an unrelieved picture of gross neglect which eventually resulted in this loss.

The trustee took the asset over in 1926. The representative of the trust department of the trustee testified in substance that the mortgage was always in difficulty, that the mortgagor never discharged on time his obligations under the mortgage and that for years the trustee had known that the mortgagor was undependable. During the entire time of ownership of the mortgage by the trustee pressure had to be kept on the mortgagor. The mortgage was referred to attorneys for action at least twice prior to the direction to foreclose it. Water bills on the premises were at all times from seventeen months to twenty-two months in arrears. Tax bills were never less than six months in arrears. The witness from the trust department testified that the head of the real estate and trust department was at all times quite aware of the depreciating character of the neighborhood. The property was an old law tenement with toilets in the halls. It was built under the old Tenement House Act. It did not conform even to the minimum requirements of the Tenement House Law. The building was so old and the neighborhood so poor that rehabilitation of the building probably never would have been sound. The mortgage ran as an open mortgage during many years prior to the depression in real estate prices. It was taken over by the trustee at par. There is no evidence indicating that it was not originally worth par. There is every reason to assume on the record here that the trustee could readily have collected the mortgage principal at par and so the trustee is chargeable with the mortgage principal in the absence of an affirmative showing to the contrary.

As has already been stated, the trustee devoted most of its proof to a disclosure of conditions in 1932 and subsequent years. At that time its gross neglect had already jeopardized the investment. It cannot escape liability by a showing of conditions as of that date. When its own neglect had placed the investment in danger, the danger was no basis for excusing loss thereafter incurred. The duty of the trustee was to avoid the obvious danger by earlier collection of the mortgage. Long before the loss became inevitable every signpost of danger to the security of the mortgage had been seen by the trustee's agents charged with the duty of protecting the investment. The proof offered to excuse inaction in 1932 and subsequent years furnishes cogent proof that inaction in earlier years was the grossest kind of neglect. On this record the plain duty of this trustee was to have collected this mortgage just as soon as it was free to do so. On this record the failure to collect the mortgage at the first available date is not understandable. Why this mortgagor should have been carried

by this trustee for many years though the mortgage was continuously in default remains wholly unexplained on this record. The record compels the ruling that the trustee must refund to the trust estate the capital sum invested in the mortgage plus interest at the average rate earnable by trust funds after the last date to which mortgage interest was fully paid. The objection of the special guardian with respect to this claim of loss is accordingly sustained.

Questions have been raised concerning the true intent and meaning of the provisions of the will and codicil of deceased. Paragraph third of the will says in part: " I hereby empower my executor and trustee, Austin B. Fletcher, to mortgage, lease, or sell, in his discretion, any real estate of which I may die seized, and to execute any needful deed or deeds in that regard; to pay all taxes and insurance thereon, and to maintain the same in proper repair; and to invest or re-invest the proceeds in other real property, or in such securities as he, in his judgment, may approve, or which to him may seem advisable; and, as to the personal property, to invest and re-invest the proceeds thereof in such securities as he, in his judgment, may deem advisable, or which he may approve."

Paragraph second of the codicil directs that the residue of the estate of deceased be placed in trust " to pay * * * the net rents, income and profits thereof " to income beneficiaries named. Testatrix provides for disposal of the remainder by saying, " I give and devise and bequeath my said real and personal property to the issue of my said granddaughter * * * in equal shares."

The question first presented is whether the reference to " net rents, income and profits " operates to give to the beneficiaries of income the gains, if any, realized upon the sale or liquidation of principal assets. The court holds that the phrase means nothing more than if the only word used was the word " income." (*Linsly v. Bogert*, 87 Hun, 137; affd., 152 N. Y. 646; *Matter of Proctor*, 85 Hun, 572; *Matter of Eger*, 139 Misc. 59.) Hence the beneficiaries of income have no right in capital profits.

The next question is whether the powers granted to the individual originally named as executor and trustee are continued in the hands of the substituted trustee. The court holds that here the situation was one in which the grant was personal and that testatrix did not envisage the naming of a substitute trustee nor intend that the personal discretion granted to the individual named by her should be exercised by someone of whom she may never have heard. Accordingly the substituted trustee is limited in respect of investments to such as are legal for trustees under the law of the State of New York.

Submit, on notice, decree construing the will and settling account accordingly.