# In the Matter of the Estate of IDA C. POILLON, Deceased.

Surrogate's Court, New York County, July 2, 1937.

*Blandy, Mooney & Shipman* [*William West Shaw* and *Francis C. Leffler*, of counsel], for the trustees.

*Willaim H. Freedman* [*Seymour Groshut* of counsel], for Virginia N. Smith and Josephine M. Crow, individually and as administratrices of estate of Emily S. Crow, deceased, and as two of trustees of estate of Henry M. Crow, deceased, objectants.

*Hilbert I. Trachman*, for administratrix *de bonis non* of estate of Cornelia Swift, deceased, objectant.

DELEHANTY, S. Objectants question the conduct of the trustees in respect of an investment in a whole mortgage originally having a face value of $3,500 on which the principal unpaid is now $3,000 and in respect of an investment in a mortgage participation certificate now in default.

There is no criticism of the original investment in the whole mortgage of $3,500. The account reports that investment, the collection of $500 on account of principal and a present face value of $3,000. In effect the surviving trustee says that the mortgage is now worthless. Concededly nothing has been done by her to enforce the lien of the mortgage by reducing to ownership the land

upon which it is a lien. The property is said to be in a neighborhood populated by negroes and to be improved by a two-family house. It appears to be conceded that since the trustees held the mortgage the house has at all times been occupied by tenants though the amount of the rents paid by them and the identity of the tenants and of the person collecting the rents is not shown. There was a second mortgage on the premises. The testimony shows that the surviving trustee acted on the assumption that the second mortgagee would protect the latter's interests in the property and thus would protect the first mortgage. In 1931 the second mortgagee began a foreclosure action. In her complaint she asserted that she had paid the real estate taxes for a year and a half prior to her foreclosure and had paid a full year's interest on the first mortgage. After beginning her foreclosure and in November, 1932, she paid $500 in reduction of the principal of the first mortgage and at the same time paid up another year and a half of overdue land taxes. She thereby cured defaults upon which the trustees long before could have acted as basis for foreclosing the first mortgage. From that time forward the second mortgagee paid interest to the trustees and they in turn paid it over to the beneficiary of income. The second mortgagee paid no land taxes or water charges after November, 1932. Thus, though the prior defaults were cured in November, 1932, the first mortgage was again in default, at least from the coming due of the April, 1933, installment of land taxes.

The account on file carries the transactions of the trustees down to October 15, 1936, so far as the surviving trustee is concerned. It shows the transactions of the deceased trustee down to the date of his death which was May 24, 1930. As to the deceased trustee no showing is made of such neglect as warrants any charge against him in respect of the $3,500 mortgage. Whatever the condition of the property was when he died in May, 1930, it has already been noted that the mortgage became in good standing when the payments were made by the second mortgagee in November, 1932.

As to the surviving trustee, the record shows absolute neglect of duty from and after April, 1933. She was fully advised in the preceding years of 1931 and 1932 that the owner was not making payments either of taxes or of interest. These defaults of the owner had been so long continued that the surviving trustee could no longer assume that the owner would take any steps to protect his equity. The trustee's proof shows that she did not indulge in any such hopes but relied entirely upon the second mortgagee to protect the first mortgage. In the beginning of April, 1933, the trustee should have known that the first mortgage was in default. Her

apathy for three and a half years down to the date of the account has not been and cannot be justified. She was under the affirmative duty to enforce the mortgage as soon as the default occurred in 1933. It was reckless of the trustee to collect the so-called interest on the mortgage and pay it over to the life beneficiary while the liens against the property for unpaid taxes were accumulating. It was the trustee's good fortune that the second mortgagee paid up the defaults for the years 1931 and 1932. The trustee derives no credit from such payments. Because of them she avoids surcharge merely for her neglect prior to the payment. She did not discharge her fiduciary duty by leaving the management of the property in the hands of the second mortgagee if indeed it was even in the latter's hands. So far as the trustee is concerned the proof shows that her agent only once or twice looked at the outside of the building. The trustee never inspected the building, never sought a receiver of the rents and never in any degree took the steps necessary to protect the mortgage. Reliance upon the second mortgagee being no excuse for inaction there is none elsewhere to be found in this record.

In the account the mortgage is reported as having a value of $3,000 as of 1932 when the reduction of principal was made. Such slight evidence as there is in this record supports the view that the mortgage in November, 1932, was worth $3,000. Since no change of substance occurred the same value is reasonably to be attributed to the mortgage in April, 1933, when the duty to foreclose it arose. The mortgage now is reported in Schedule H to have only the nominal value of $91.13. Such proof as is in the record on the subject of present worth confirms the fact that the mortgage now has no value. The representatives of the deceased trustee and the surviving trustee proceed on the assumption that the mortgage has no value but that they are not responsible for the loss of value. The court holds the surviving trustee liable. (*Matter of Baxter,* 164 Misc. 183; affd., 250 App. Div. 701.)'

Objectants here are the remaindermen. They have no interest in the fund except to protect it from capital loss and to secure income from the date when the trust fell in. This occurred on April 9, 1936, when the life tenant died. The remaindermen will be fully protected in their rights by requiring the surviving trustee to take over the mortgage in controversy as her own upon paying into the trust estate the capital sum of $3,000 with interest thereon at four per cent per annum from April 9, 1936. The objections in respect of this mortgage investment are sustained to the extent stated.

On December 1, 1932, the surviving trustee invested the sum of $500 which had been paid shortly before in reduction of the $3,500 mortgage. This sum of $500 was invested in a New York Title and Mortgage Company certificate in Series B-11. Interest on this certificate became due on June 1, 1933. None was paid then nor was any paid in December, 1933. Beginning with February 1, 1934, part payments of interest were made and up to October 15, 1936, total payments of $46.25 were received on an interest accrual for the period which amounted to $106.49. At the time of purchase the certificate formed part of a series of certificates which had been issued on a mortgage for $850,000 covering an apartment hotel on Ocean parkway in Brooklyn. Apparently the issuing company up to its suspension had sold certificates representing only about half of the mortgage. Objectants complain of this purchase on the ground that the certificate did not represent a share in a mortgage on unincumbered property as prescribed by Personal Property and Decedent Estate Laws and on the ground that the investment was negligently made.

At the time of purchase there were unpaid taxes on the property amounting to $4,338.75, excluding interest thereon. These taxes were actually paid on January 3, 1933, sixty-three days after they became a lien and thirty-three days after the last date on which they could have been paid without penalty. Argument is made by the trustees that any defect in the security at the time of purchase was cured by the payment of the taxes in January, 1933. The question presented by the existence of an incumbrance for a comparatively nominal amount and for a comparatively brief period has had frequent consideration by the courts. It may be accepted as the law that a casual and unintentional lapse in payment of currently accruing taxes or other charges in the case of a property which is earning its carrying charges will not furnish basis for surcharge if in fact the incumbrance is promptly removed without creating further default or futher incumbrance. (*Chesterman* v. *Eyland,* 81 N. Y. 398, 404; *Crabb* v. *Young,* 92 id. 56, 69.) It does not follow that the mere removal of the particular incumbrance furnishes in every case a complete answer to a charge of negligence in the making of the investment.

In this case it is quite apparent that the investment was negligently made. The attorney for the trustee took the word of a salesman of the issuing company that the certificate was good. No doubt he relied, as did many others at the time, on the supposed worth of the guaranteeing company. That reliance is not a substitute for investigation. No inquiry was made respecting the building. The word of the salesman was accepted as to the com-

pletion of the building and its occupancy. Nothing is shown of actual investigation as to its earnings or as to its capacity to pay its carrying charges. Circumstantially it is established that the property was in difficulty because it did not pay even the interest which accrued next after the purchase. There is no showing by the trustee that the 1933 taxes were paid in April. In was common knowledge at the time of the purchase that apartment hotels were in difficulty generally throughout the city. The inquiry which should have been made would have disclosed the tax default and would have caused a vigilant trustee to reject the investment or to make further inquiry respecting the capacity of the building to earn and to pay taxes and interest thenceforward.

In the case of *Crabb* v. *Young* (*supra*) the court held that a particular tax incumbrance, trivial in comparison with the value of the property, was not to be deemed an incumbrance within the meaning of the will there involved. In its discussion of the subject the court cited *Croft* v. *Williams* (88 N. Y. 384). That case had nothing to do with the question of what constitutes unincumbered real estate. Its citation in the *Crabb* v. *Young* case indicates that the point which the court in the tax case had in mind was that no loss was incurred by reason of the tax incumbrance or by reason of the neglect of the executor to see that the tax was paid before investing. The two cases when read together mean that if there be failure of causal connection between a trivial tax lien and a loss occurring long afterward, the courts will not penalize the fiduciary by holding the original investment to be an improper one. But the courts have not carried this rule to the point which would justify the defense here interposed by the trustee. That defense, it should be noted, is based entirely upon the fact that the tax lien was paid off. The defense is not supplemented by any proof that the payment was out of earnings of the property or that the property otherwise was carrying its burdens.

That the courts will in a proper case hold the existence of a tax lien to be of substantial moment is evidenced by *Rector* v. *Title Guarantee & Trust Co.* (246 App. Div. 251; affd., 272 N. Y. 568). In the case cited a purchaser of a mortgage was permitted to rescind because at the time of sale the selling company had knowledge that arrearages of taxes in fact existed. The seller's representation that the property was unincumbered was held untrue and the existence of the unpaid tax held a sufficient basis for recovery of the purchase price. A case having some features analogous to the present situation is *Matter of Dalsimer* (160 Misc. 906; affd., 251 App. Div. 385). There arrearages in water charges were held, in combination with other circumstances, to be sufficient to show

negligence in the making of the investment by the fiduciary. This court said in the *Dalsimer* case: " The trustee asserts that since the incumbrances of record were actually paid by January, 1932, and since the violations have actually been cleared of record, no argument may be based by objectants now upon their existence in July, 1931. This argument is rejected. While the payments have been made and the work done it has been at the cost of adding an equivalent or larger burden. No payment was made out of surplus nor except at the continued prejudice to the mortgagees." In that case the proof showed that the property continued to run in the red from a period prior to the payment of the water charges. As already noted, the trustee here has made no proof whatever about the property earnings. The history of the investment as gathered from the account itself plus the proof of the actual existence of the tax lien at the time of the purchase establishes at least *prima facie* imprudence and negligence in the investment. There having been offered by the trustee no offsetting showing which brings the discharge of the incumbrance within the principle of the cases cited above, the negligence in the investment remains unexcused and the loss therein is plainly attributable to the surviving trustee. Accordingly the objections to the investment in the $500 certificate are sustained to the extent of requiring the surviving trustee to replace the amount of $500 in the principal account together with interest at four per cent thereon from April 9, 1936, when the trust terminated. This investment having been made after the death of the deceased trustee, he cannot be charged therefor.

The foregoing rulings dispose of objections first and second filed by the respective objectants. In the course of the hearing objections third and fifth were withdrawn. The court overrules objection fourth which is based upon asserted lack of diversification of investments. The court will not deny commissions. As to the deceased trustee there is no basis whatever for such denial. As to the surviving trustee the court does not find such bad faith as would warrant denial. The commissions, however, will be applied in the case of the surviving trustee only as a credit against the liability fixed in her case.

Submit, on notice, decree settling the account accordingly.