## In the Matter of the Estate of IDA C. POILLON, Deceased.

Surrogate's Court, New York County, November 24, 1937.

*Blandy, Mooney & Shipman* [*William West Shaw* and *Francis G. Leffler* of counsel], for the trustees.

*William H. Freedman* [*Seymour Groshut* of counsel], for Virginia N. Smith and Josephine M. Crow, individually and as administratrices, etc., of Emily S. Crow, deceased, and as two of the trustees of the estate of Henry M. Crow, deceased, objectants.

*Hilbert I. Trachman,* for the administratrix *d. b. n.,* etc., of Cornelia Swift, deceased, objectant.

DELEHANTY, S. After publication of the prior decision of the court (163 Misc. 897), this proceeding was reopened because counsel for the surviving trustee had been misled by court room colloquy into resting her case without calling witnesses who were available to her. The matter has now been fully heard. In the prior decision the estate of a deceased trustee was exonerated because the criticized conduct of the trust affairs occurred after his death. The surviving trustee was held accountable for the capital value of a mortgage participation and also for the value of a whole mortgage. As to the mortgage participation, the rehearing has added nothing to the record, and no further comment need be made thereon. As to the whole mortgage, further proof was received which requires some comment. Nothing in the additional proof changes the ruling which exonerated the estate of the deceased trustee. Accordingly, the commentary hereafter made will be directed only to the liability of the surviving trustee.

The additional proof presented was furnished by experts called by either side to the controversy and also by testimony as to the actual rental paid for occupancy of the mortgaged property and as to the rent uncollected for the mortgaged property though probably collectible if demanded currently as it came due. The expert testimony on behalf of the trustee placed the value of the land in 1933 at $2,000 and of the building at $1,000. This expert assigned the same values for the year 1937. The expert for the objectants assigned a land value of $1,500 to the property in 1933 and a building value of $3,000. He gave to the land in 1937 a value of $1,350 and to the building a value of $2,150. It is conceded on the record that for tax purposes the land and building were assessed in 1933 for $6,500 (the land value being set at $3,200), and that in 1937 the assessment was $5,000 (the land value being $3,200). The proof also showed that the premises are occupied now by a family which has been in the premises since 1925, using the whole building. From 1925 to 1929 rent of $125 a month was paid, then $70 a month until 1932, then $50 a month until July,

1935, when someone told the tenant not to pay "until she heard from the court." Since then no rent has been collected from the tenant. This proof shows that someone unidentified on this record collected over $1,300 in rent since taxes and mortgage interest went into default in 1933 and 1935 respectively. The proof shows that since July, 1935, an additional $1,400 of rent was probably collectible. Diligence on the part of the surcharged trustee would have salvaged the greater part of this $2,700 for application to the carrying charges on the property and to the mortgage debt. The total lack of action on the part of the trustee is fully stated in the prior decision. This proof merely accents the comments there made.

The trustee through counsel now contends that the court is limited to a surcharge which represents the difference between the value which the mortgage had when the duty to foreclose it arose and its present value ascertained by proof of the worth of the underlying real property. Stating the proposition negatively the trustee asserts that the court has no power to compel the trustee to take over the mortgage for her individual account or to direct her to pay into the estate the capital sum secured by the mortgage with interest thereon from the date of termination of the trust.

Lacking a free market for mortgages as such it may be permissible for the parties to attempt to establish the value of the mortgage by proof of the value of the underlying property on which it is a lien. (*Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215, 232.) The conclusion hereafter reached is valid whether the proof of underlying property value is considered or not. However, it should not be overlooked that the accounting trustee has herself stated for the record that the value of this mortgage is only $100. That value is allocated in the account by assigning $8.87 to income account and $91.13 to principal account. In Schedule B of the account the trustee says respecting the property and the mortgage:

" Taxes are in default on the premises for the years 1933, 1934, 1935 and 1936. The surviving trustee did not foreclose the first mortgage, since she was advised that due to the general depressed condition of real estate and the condition of the property in question, the property would not be worth the expense of foreclosure. The surviving trustee, through her attorneys, has made constant and diligent effort to obtain the interest and taxes from the second mortgagee, but has not been able to obtain any further payments.

" The mortgage has been offered for sale through mortgage brokers, and the best offer that has been obtained therefor is

$100.00 flat. This would result in a decrease of $2,908.87, as follows:

Balance of principal unpaid........................  $3,000 00
Accrued interest to Oct. 15, 1936...................     292 00

                                                     $3,292 00

" The accrued interest of $292.00 is equal to 8.87% of the above total, so that income is entitled to receive 8.87% of the above offer, or $8.87, leaving a balance of principal of $91.13."

Since this declaration in the account there have accrued the 1937 water and land taxes. Objectants' Exhibit 1 shows that the total tax liability exceeds $1,000 without taking into account any interest since October 1, 1937. It is conceded that the cost of foreclosure would amount to $380. The time necessary for foreclosure will probably result in the accrual of additional water and tax charges with the result that a total outlay (including foreclosure costs) of about $1,500 would be necessary if the mortgagee were to acquire the property. The lack of bidders, other than the plaintiff, on such sales is a matter of common knowledge. Offsetting this burden would be such rent as might be recovered by a receiver who presumably would be able to sue for back rent as well as for the accruing rents. At the end of the foreclosure process the mortgagee would have a piece of real estate which the proof presented by the surcharged trustee shows is presently worth only $3,000. At that point there would have been invested in the land thus acquired (a) the mortgage principal of $3,000, (b) the accrued and unpaid interest from March 1, 1935, of about $500, (c) the cost of clearing the property of tax, water and assessment charges unpaid amounting to $1,100, and (d) the foreclosure cost of $380. It should be noted that from April, 1933, to March 1, 1935, interest was collected by the surcharged trustee and paid over to the life tenant in a total sum of at least $360, while taxes remained unpaid and were permitted to accumulate interest penalties.

Owing to an apparent misconception of the tenor of the prior decision the surcharged trustee contends, at least impliedly, that the court must compel the remaindermen to take this defaulted mortgage subject to the heavy burdens attached to it and take with it some amount in cash which the court is now to fix as damages payable by the trustee on the basis of the present value of the land upon which the mortgage is a lien. She contends that the court must constrain the remaindermen to take this security which the trustee herself could not sell (except at the sacrifice price of $100) and

compel them to take it with the certainty of a practically total loss unless they finance the burden of the foreclosure costs and of the taxes which have already accrued and which will hereafter accrue. If the trustee's position is sound then the remaindermen in actual effect have to undertake the salvage of this mortgage by foreclosing the property and by managing it until an opportune time for its resale. Of course it is apparent that there is no predictable time as of which any predictable sum of money would be procurable by the remaindermen.

In the foregoing statement of the position of the trustee it may be that the court has failed to state her argument adequately. It may be that she is asserting that since the property was worth in 1933 no more than it is worth in 1937 there is no loss at all with which she may be surcharged. Since that contention entirely ignores the vital fact that in the four years intervening since 1933 there have accrued liens prior in right to the mortgage debt and substantial in amount, this contention, if made by the trustee, must be rejected. It seems from her brief that she goes so far as to assert this basis of excuse from liability. The language of the prior opinion which dealt with value in 1932 and 1933 was directed to the establishment of the point that in such years the mortgage was worth its principal sum. The opinion *did not make any rule for ascertainment of damage.* On the contrary, the court accepted the trustee's statement that the mortgage was worthless and held her responsible for the entire amount invested in it. Now that the trustee has repudiated her declaration in the account that the mortgage is worthless the court will state the rules applicable to the situation as the proof now presents it.

The respective contentions of the parties require determination of the power of the court to compel a defaulting trustee to refund to the estate under his management the capital value of a security which he permitted to acquire a character which vitally affects adversely its form and value. Note should be made of the rules of law which are applicable to investments made by trustees which do not conform to fiduciary standards. In respect of these the law is well settled that the beneficiaries have the option to take over the investment if they choose or to compel the fiduciary to return to the funds of the estate the amount which he invested improperly. (*Villard* v. *Villard,* 219 N. Y. 482, 499; *Matter of Garvin,* 256 id. 518.) This rule is applied to unauthorized investments in mortgages. (*Matter of Ryer,* 94 App. Div. 449; affd., 180 N. Y. 532; *Matter of Lyall,* 212 App. Div. 417, 421.)

Where a fiduciary has been surcharged because of the improper **retention** of a security or the lack of fiduciary action to protect it

no reason in principle appears for the application of a different rule. The text writers are of this opinion. In the Restatement of the Law of Trusts (§ 209) it is said: " (1) If the trustee fails to sell trust property which it is his duty to sell, the beneficiary can charge him with the amount which he would have received if he had properly sold the property, with interest thereon." In the comment explanatory of this rule the Restatement says: " (b) * * * If the property has depreciated in value, the beneficiary can require the trustee to pay the amount which he would have received if he had sold it in accordance with his duty, in which event the property will belong to the trustee subject to a lien to secure the beneficiary's claim." In 3 Bogert on Trusts and Trustees (§ 705) the text says: " If the trustee does not convert at all, and holds the securities in question until the time of litigation, the *cestui* may, of course, ignore the breach and treat the retained securities and their income as trust property, as he would if the retained securities have increased in value and have been especially productive. But if, as is usually the case where litigation results, the retained securities have become worthless or of lower value than at the time when they should have been sold, it is clear that the *cestui* will be made whole by compelling the trustee to pay into the trust the amount which would have been received upon a sale of the securities within a reasonable time after the duty to convert arose, plus interest or other estimate of the income which would have been received thereon to date, and by letting the trustee keep for himself the improperly retained securities." (To the same effect see discussion in 80 University of Pennsylvania Law Review, 1105, 1108.)

In passing on the liability of a committee of bondholders which had deviated from its instructions the Court of Appeals in the case of *Industrial & General Trust, Ltd.*, v. *Tod* (*supra*, pp. 229, 231) said: " The defendants are in the attitude of trying to force these bastard securities upon the plaintiff in place of the legitimate bonds which have been rendered of no value by their action. They seek to compel the plaintiff to take what they offer in securities created by themselves, instead of what the old bonds were worth and would have brought if the reorganization agreement had been performed. Even ' something just as good ' or ' worth just as much,' if such were the fact, is not what the law awards for the breach of an agreement. * * * The plaintiff's bonds are destroyed. There is no substitute that it is bound to accept, * * *. If one intrusts property to an agent or bailee, who agrees to do a specified thing with it, but instead he violates his agreement and does something else, the principal is not obliged

to accept from the agent what he got through the violation, but may insist that he should pay the value of the property. *More-over, the agent cannot reduce the damages by offering the property back, provided it has been substantially changed in form and value without authority.*" (Italics supplied.)

While this cited case dealt with a question of damages the principles of law there declared are applicable to a situation such as is presented in this accounting proceeding. When *the form and value* of a security have been altered by the misconduct of a fiduciary he should be in the same case as is the fiduciary who makes an improper investment in the first instance. And the beneficiary should have the same right to demand that the fiduciary take over the security and reimburse the fund.

Here the situation is that on the occasion when the fiduciary had the undoubted duty to foreclose the mortgage it was truly a first mortgage on a parcel of property improved by a building which in turn was productive of rent in an amount adequate to pay the interest on the mortgage and the taxes and to leave a surplus. The court has found that the whole mortgage principal was then recover-able. *Now* the mortgage is a *second mortgage* subject to prior claims in favor of the city in an amount so substantial as to require any holder of the mortgage to consider whether he would risk the additional capital in order to salvage what he could out of the invest-ment. The tenant has been permitted to remain so long without paying rent as to make it certain in a practical sense that she would move rather than pay now the large amount of past due rent and the current rent as it accrues. The building has been left without attention during these intervening years. If the expert testimony in behalf of objectants is credited there has been a substantial diminution in the building value. As a *security* the mortgage actually has become valueless. The trustee so states in substance in Schedule B of her account. The income beneficiary is assigned by the trustee (Schedule B of the account) a participation in the mortgage. The prospect now facing the remaindermen is that they must invest some $1,500 of actual cash (to cover taxes, water charges and foreclosure costs) in order to reduce the property to ownership. When that has been accomplished the remaindermen will find themselves tenants in common with the income beneficiary and subject perhaps to a partition action. They will find themselves with a parcel of property for which in all probability they must find a new tenant. No reasonable mind can doubt that there has been so grave a change in the form and value of this mortgage security as to make it a wholly different thing from that which the trustee had for foreclosure

in April, 1933. Since it was the trustee's fault alone which created the existing state of the mortgage the trustee should not be permitted to choose the manner in which her wrong will be undone. That choice belongs to the remaindermen. They have elected to require reimbursement of the fund and to allow the trustee to take the security. It is the view of the court that they are warranted in taking this position. In a situation such as this proof discloses, the fact of damage is certain and the cause of damage is equally certain but, as has been already stated, the amount of the damage will remain uncertain until actual foreclosure and resale of the property have taken place.

There is no discrimination against the trustee in fixing the value of the mortgage at par in 1933 even though that value is based in some degree on opinion evidence. That is the only evidence now available and so the court must resort to it. There is no lack of fairness to the trustee in rejecting opinion evidence as the basis for a money liability fixed at this time because another and sounder course of conduct is available to the court. On this record it may be said that the court has three alternatives. It might take the statement in Schedule B of the account as binding on the trustee and hold that the mortgage has a value of only $100 if it be treated as a security and be put upon the counter for sale as such. If the court did this the accounting party would be chargeable with refund to the capital of the estate of $2,908.87, the amount necessary to make good the principal account. The court might defer any present determination of the amount of money damage, treat the mortgage as an instrument through which ownership of the land can be obtained and compel the trustee to proceed at her own cost to foreclose and to liquidate the property thus acquired and eventually to make report of the net amount recovered in a further accounting. On the coming in of such a report the court could ascertain with definiteness the loss to the capital account and could fix the damage payable by the trustee accordingly. The third alternative is for the court to say to the trustee that she must make immediate reimbursement to the trust principal of the amount which was recoverable had she taken appropriate steps in 1933. This third alternative will give to the trustee the right to take over the mortgage and to salvage her position at her own cost. It eliminates the need for delay and a further tie-up of the remaindermen while waiting for a further accounting. It is the fairest of the three alternatives. No reasonable complaint can be made by the trustee concerning this course.

In a somewhat similar situation Mr. Surrogate HENDERSON directed a trustee to pay into the capital of the trust the amount

found to be the value of bonds held by the trustee improperly. (*Matter of Garland*, 159 Misc. 333, 337.) In a case where it was dealing with a question of subrogation arising out of a requirement that a fiduciary reimburse an estate for losses caused by neglect the Appellate Division in the First Department discussed the cases which deal with the right of subrogation given to a fiduciary who improperly invests funds and is compelled to reimburse the trust estate. Reasoning from such cases the court said: " We believe that the principle enunciated in the authorities cited is equally applicable where, as here, a fiduciary is negligent in retaining securities belonging to an estate and where the fiduciary pays the value which the court has found would have been realized had the securities not been improperly retained." (*Junkersfeld* v. *Bank of Manhattan Co.*, 250 App. Div. 646.)

The situation in which the trustee now finds herself is directly due to her inaction and gross neglect for a period of four and a half years during which the form and value of this mortgage security has materially changed for the worse. If she had initiated foreclosure proceedings in 1933 and had then prosecuted them with reasonable diligence none of the burden now cast on her would have been hers. She should not be permitted to place upon the remaindermen the burden of the salvage of this security which the trustee's inaction has imperiled.

The prior decision of the court disposed of all questions otherwise requiring decision and a decree may now be submitted, on notice, settling the account and directing the transfer of the mortgage in controversy and the mortgage participation to the accounting trustee upon her paying into the trust capital the sum of $3,500, with interest thereon at four per cent from April 9, 1936, the date of termination of the trust.