In the Matter of the Probate of the Will of SAMUEL J. RECKFORD, Deceased. In the Matter of the Application for a Compulsory Accounting in the Estate of FLORENCE L. RECKENDORFER, Deceased. JANET RECKFORD et al., as Executors of JOSEPH S. RECKFORD, Deceased, et al., Appellants; RICHARD P. LIMBURG, as Executor of SAMUEL J. RECKFORD, Deceased, et al., Respondents.

Argued March 9, 1954; decided June 3, 1954.

*George A. Spiegelberg, William I. Riegelman* and *Dora Furth* for executors, appellants. I. The claim against the executor of Samuel J. Reckford, as legal life tenant of the estate of Florence L. Reckendorfer, can only be established in an accounting proceeding brought in the latter estate. (*Matter of Raymond* v. *Davis*, 248 N. Y. 67; *Matter of Zollikoffer*, 166 Misc. 735; *Matter of Walker*, 70 App. Div. 263; *Matter of McConnell*, 176 Misc. 900; *Matter of Moore*, 169 Misc. 336; *Matter of Morrell*, 154 Misc. 356; *Matter of Gall*, 182 N. Y. 270; *Lambert* v. *Craft*, 98 N. Y. 342; *Fiester* v. *Shepard*, 92 N. Y. 251; *Matter of Quenzer*, 152 Misc. 796.) II. If this proceeding is in the Samuel J. Reckford estate, a prima facie case was established and the claim should have been allowed. The uncontradicted facts show that Samuel J. Reckford came into possession of the funds in question as legal life tenant, and that upon his death no part of said assets were in his possession. (*Fassbender* v. *American Sur. Co.*, 66 Misc. 6.) III. A legal life tenant is a fiduciary with respect to the remaindermen and has the duties of a trustee towards them in connection with the property constituting the life estate. (*Brokaw* v. *Fairchild*, 135 Misc. 70, 231 App. Div. 704, 256 N. Y. 670; *Olcott* v. *Estate of Hoffman, Inc.*, 127 Misc. 399, 220 App. Div. 713; *Matter of von Kleist*, 265 N. Y. 422; *Smith* v. *Van Ostrand*, 64 N. Y. 278; *Matter of Moeller*, 179 Misc. 630; *Peck* v. *Smith*, 227 N. Y. 228; *Rogers* v. *Atlantic, Gulf & Pacific Co.*, 213 N. Y. 246; *Seaward* v. *Davis*, 198 N. Y.

415; *Leggett* v. *Stevens,* 185 N. Y. 70; *Matter of Denton,* 102 N. Y. 200.) IV. A life tenant is required to maintain clear and accurate records of the funds in his custody and accurately to account therefor. Upon his failure to do so he must affirmatively establish that shortages did not result from his improper conduct; and failing such affirmative proof the life tenant must and will be surcharged. (*Matter of Steinberg,* 153 Misc. 339; *Matter of Grauer,* 146 Misc. 469; *White* v. *Rankin,* 18 App. Div. 293, 162 N. Y. 622; *Marvin* v. *Brooks,* 94 N. Y. 71; *Matter of Bunting,* 261 App. Div. 32, 288 N. Y. 388; *Matter of Noll,* 10 App. Div. 356.) V. The conflict in Mr. Limburg's position did not justify a departure from the general rules of law. (*Matter of Flood,* 236 N. Y. 408; *Matter of Leland,* 219 N. Y. 387.) VI. There is no proof that any part of the personalty was used to improve the realty, and even if such proof existed, any such use of the personalty included in the life estate would not save the life tenant from surcharge. (*Agate* v. *Lowenbein,* 57 N. Y. 604; *Jacobs* v. *Steinbrink,* 164 App. Div. 715; *Kidd* v. *Dennison,* 6 Barb. 9; *McDonald* v. *O'Hara,* 117 Misc. 517; *Peerless Candy Co.* v. *Kessler,* 123 Misc. 361; *Matter of Lamb,* 10 Misc. 638.) VII. Real estate taxes and water charges shown in the account as clearly due and unpaid at the date of Samuel J. Reckford's death have been proved beyond doubt.

*Andrew Y. Rogers* and *J. Dormer Cannon* for Edith F. Limburg, as committee, appellant, and *F. Van Siclen Parr, Jr.,* and *Jacob P. Howard* for Edith F. Limburg, appellant. I. The will of Florence L. Reckendorfer gave Samuel J. Reckford no power whatsoever to consume or otherwise dispose of her property during his life. (*Matter of von Kleist,* 265 N. Y. 422; *Peck* v. *Smith,* 227 N. Y. 228; *Seaward* v. *Davis,* 198 N. Y. 415; *Smith* v. *Van Ostrand,* 64 N. Y. 278; *Farmers' Loan & Trust Co.* v. *Mortimer,* 219 N. Y. 290; *Matter of Wright,* 139 App. Div. 1, 199 N. Y. 569; *Waterman* v. *New York Life Ins. & Trust Co.,* 204 App. Div. 12; *Merrill* v. *Lynch,* 173 Misc. 39; *Hume* v. *Randall,* 141 N. Y. 499; *Keefe* v. *Keefe,* 230 App. Div. 654, 257 N. Y. 604.) II. Samuel J. Reckford as life tenant became a trustee and was accountable as such for the management of his wife's estate. (*Smith* v. *Van Ostrand,* 64 N. Y. 278; *Peck* v. *Smith,* 227 N. Y. 228; *Matter of von Kleist,* 265 N. Y. 422;

*Seaward* v. *Davis,* 198 N. Y. 415; *Olcott* v. *Estate of Hoffman, Inc.,* 127 Misc. 399, 220 App. Div. 713; *Matter of Rowland,* 153 App. Div. 327; *Matter of Ungrich,* 48 App. Div. 594, 166 N. Y. 618; *Matter of Close,* 281 App. Div. 147; *Matter of Raymond* v. *Davis,* 248 N. Y. 67.) III. Because of the life tenant's neglect or willful refusal to keep records, it must be presumed that any failure on his part to preserve his wife's property for the remaindermen has been due to a violation of his fiduciary duty. (*White* v. *Rankin,* 18 App. Div. 293, 162 N. Y. 622; *Gould* v. *Gould,* 203 App. Div. 807; *Matter of Bunting,* 261 App. Div. 32, 288 N. Y. 388; *Marvin* v. *Brooks,* 94 N. Y. 71; *Fassbender* v. *American Sur. Co.,* 66 Misc. 6.) IV. Liens for unpaid taxes, water charges and accrued penalties at the death of Samuel J. Reckford upon the wife's real property are obligations of the life tenant for which his estate must be surcharged. V. The conflicting positions of Richard P. Limburg as executor of the life tenant's estate and as coexecutor of a remaindermen's estate cannot alter or affect the rights of these appellants. VI. If the court concurs with the Surrogate that the evidence available in the record does not warrant a surcharge of the life tenant, the appellants should be granted a new trial.

*Seymour J. Wilner* and *Charles Tolleris* for Dorine Campbell, respondent. I. The only proceeding before the Surrogate was the claim against Samuel Reckford's estate. The Florence Reckendorfer account was not before the court. (*Matter of Raymond* v. *Davis,* 248 N. Y. 67; *Matter of Zollikoffer,* 166 Misc. 735.) II. All remaining questions have been conceded by appellants. The concession by appellants is decisive of this appeal. III. Appellants had the burden of proof. They failed to prove their claim and the Surrogate properly dismissed it. IV. Personalty used to benefit the realty is chargeable to corpus. (*Matter of Ardrey,* 232 N. Y. 109; *Stevens* v. *Melcher,* 152 N. Y. 551; *Matter of Collins,* 187 Misc. 188; *Matter of Miller,* 175 Misc. 583; *Matter of Cronise,* 167 Misc. 310; *Matter of Trimbey,* 138 Misc. 662; *Matter of Heroy,* 102 Misc. 305.) V. The claimants utilized a faithless fiduciary's divided loyalties to obliterate respondent's legacy by a default on an unproved claim. (*Matter of People* [*Bond & Mtge. Guar. Co.*], 303 N. Y. 423; *Perkins* v.

*Meyer,* 302 N. Y. 139; *Meinhard* v. *Salmon,* 249 N. Y. 458; *City Bank Farmers Trust Co.* v. *Cannon,* 291 N. Y. 125; *Matter of Durston,* 297 N. Y. 64; *Matter of Hubbell,* 302 N. Y. 246.)

VAN VOORHIS, J. This appeal concerns the personal property in the residuary estate of Florence J. Reckendorfer, who died in 1907. She gave the life use of it without the appointment of a trustee to her husband Samuel J. Reckendorfer, who later changed his name to Reckford, and, upon his death, she directed that it should go to such of their children or their children's issue as her surviving husband might by will appoint. This constituted the husband, in effect, a trustee of the principal of her residuary estate (*Matter of von Kleist,* 265 N. Y. 422; *Matter of Denton,* 102 N. Y. 200). Her husband was authorized to omit any of the children that he might choose, and his power of appointment was unlimited except that it had to be exercised for the benefit of one or more of Mrs. Reckendorfer's children, or their descendants. Mr. Reckford survived his wife by more than forty-one years, and died in 1949. It is asserted that neither he nor his estate have accounted for these assets belonging to his wife's estate. They had two daughters, Edith F. Limburg and Marion T. Mack, and one son, Joseph S. Reckford. Joseph survived his father by only two months, dying also in 1949. Samuel J. Reckford's will exercised the power of appointment in favor of Joseph S. Reckford exclusively. After the death of Joseph S. Reckford, objections were filed to the probate of Samuel J. Reckford's will by Edith Limburg and Marion T. Mack. The latter became incompetent, and is represented by her committee. The objections interposed by Edith and Marion were withdrawn soon thereafter, on the basis of an agreement between them and Joseph's executors, whereby it was provided that the remainder of the mother's estate (described as a claim against the father's estate) should be divided between them in the proportion of 70% to the estate of Joseph S. Reckford, 15% to Mrs. Limburg and 15% to Mrs. Mack.

The contest is between the estate of Joseph S. Reckford, Edith F. Limburg and Marion T. Mack, upon the one side, and a legatee of Samuel J. Reckford for $75,000 named Dorine Campbell on the other side. Dorine Campbell does not take

through the Florence J. Reckendorfer estate, but Samuel Reck-ford's estate is insufficient to pay Mrs. Campbell's legacy if its ostensible assets are, in reality, the residuary estate of his deceased wife. The point is simply that the assets which Reck-ford purports to have left upon his death are not more than sufficient to pay what Mrs. Limburg, Mrs. Mack and the Joseph S. Reckford estate are claiming as owners of the remainder of their mother's residuary estate. The amount of the claimed surcharge against Samuel J. Reckford's estate for this purpose is $129,799.11.

Samuel J. Reckford has not been shown to have accounted during his lifetime for his administration of the residuary estate of Florence Reckendorfer. On the other hand, there is no evidence that he failed to account or concerning what he did with these assets. There is no evidence which indicates that he misappropriated the principal by spending it instead of merely the income for his own use. The personal property which he received from his wife's estate, except for $5,000 worth of jewelry and apparel, consisted of coupon bonds and 100 shares of common stock of United Metals Selling Company and ten shares of the common stock of National Biscuit Co. The record indicates that a substantial amount of these bonds were redeemed. The shares in United Metals Selling Company were sold for money which was paid to Samuel J. Reckford. He indorsed the certificates in the name of his deceased wife by himself as executor. The National Biscuit Co. shares were transferred to himself by indorsement signed "Florence J. Reckendorfer by Samuel J. Reckendorfer Execu-tor," and three years later were sold by him. He apparently received the proceeds. Reckford was entitled to receive these proceeds, inasmuch as under his wife's will no formal trust was established, and he was the life beneficiary with the power to administer the principal in his own name. The figure of $129,799.11 whereby it is sought to charge his estate, includes $5,000 as the original value of the tangible personal property, being jewelry and wearing apparel, $84,075 original value of coupon bonds, $39,650 representing the proceeds of sale of these shares of United Metals Selling Company and National Biscuit Co., and $6,957.56 described as taxes, frontage charges

and penalties on real property which it is contended that he should have defrayed as the life beneficiary of the income from the said real property. The real estate is still there but this is a personal charge for which he is claimed to be liable in respect thereof. These figures make a total of $135,682.56, against which a credit is conceded of $5,883.45, leaving the total alleged surcharge of $129,799.11.

An affidavit by Richard P. Limburg was received by stipulation which purports to state whatever he has been able to discover concerning these estates, and quotes a remark by a man named Fred Lachenauer (a cash legatee of $5,000 under Samuel J. Reckford's will and Mr. Reckford's former secretary), that no books of Reckford or other records were retained, but that he destroyed them at Reckford's direction six months after the entries were made. Lachenauer did not testify as a witness, and may well have been incompetent to testify under section 347 of the Civil Practice Act. He entered an appearance *pro se,* but has taken no active part in the litigation. There is no other evidence of these circumstances. His hearsay declaration furnishes too slender a basis on which to found a surcharge.

In this condition of the record, with most of the important facts unknown and apparently unknowable, the parties have resorted mainly to presumptions and burden of proof.

The Surrogate decided against the Reckford children (including Joseph's estate) and in favor of Dorine Campbell, the principal legatee under the will of their father. In other words, the " claim " of the estate of Joseph S. Reckford, Edith Limburg and Marion Mack was dismissed, thus deciding that the Reckford estate was not to be surcharged with the personal property which Reckford received from his wife's estate in the year following her death in 1907. The Surrogate's decree was unanimously affirmed by the Appellate Division, First Department.

An imposing array of arguments has been presented why this decree should be reversed, and why Samuel J. Reckford's estate should be surcharged. They are, briefly, that it is asserted that Samuel J. Reckford has failed to account, that every presumption is against a trustee who has failed to account, that the burden is upon him or his estate to render an account

and that enough facts were shown here to call upon the estate of Samuel Reckford to show what was done with the assets which constituted the personal property in his wife's residuary estate. It is said (as hearsay by Lachenauer) that he kept no record of his dealings with the property, and that no excuse is offered for inability to account.

The other side emphasizes the alleged conflict of interest as fiduciary of Richard P. Limburg. Limburg, husband of Edith, was named as one of three executors by Joseph S. Reckford, and he was likewise named by his father-in-law Samuel J. Reckford, as alternate executor to Joseph S. Reckford. He was apparently trusted by both of these decedents, who were his father-in-law and his brother-in-law, and he petitioned for letters testamentary on both estates. He was coexecutor of Joseph S. Reckford, with the widow Janet S. Reckford and City Bank Farmers Trust Company. He became the sole executor of his father-in-law, Samuel J. Reckford. Dorine Campbell formally objected to his becoming executor of Samuel J. Reckford, calling attention to the conflicting interest which Mr. Limburg would have in opposite fiduciary capacities in the Samuel and Joseph Reckford estates. This objection was overruled by the Surrogate, who stated that Limburg would owe the same measure of duty in each fiduciary office, adding: '' The objectant [Dorine Campbell] will, of course, be assured of the opportunity to participate in the defense of the claim asserted against his estate by the estate of deceased's son.''

The compulsory judicial settlements of the estates of both Florence L. Reckendorfer and Samuel J. Reckford were tried together, thus eliminating any problem concerning in which estate the claim of Joseph Reckford's estate, Edith and Marion should be presented. The litigated issue is really in Florence Reckendorfer's estate, inasmuch as it concerns the surcharge of her husband whom she named as *de facto* trustee, whose estate is being called upon to account at the instance of the successors in interest of the remaindermen whom he appointed pursuant to power granted to him in her will (*Matter of Raymond* v. *Davis*, 248 N. Y. 67; *Matter of Zollikoffer*, 166 Misc. 735).

Subdivision 10 of section 262 of the Surrogate's Court Act contemplates the situation where an accounting executor or testamentary trustee accounts to himself in a separate fiduciary capacity. This subdivision provides that '' it shall not be sufficient to cite or obtain the appearance of the accounting party in such separate capacity only but in addition there shall be cited all persons interested in the estate of the deceased beneficiary, the infant or the incompetent beneficiary and all persons interested in the trust of which the accounting party is a trustee.'' Considering that this was the situation here presented, Richard P. Limburg stated in his answering affidavit verified June 11, 1951, which was served upon the attorneys for Dorine Campbell in the proceeding in which she objected to his appointment as Samuel Reckford's executor, that he '' suggests that counsel for said Dorine Campbell be designated by the Court to prosecute the defense to the petition herein ''. This affidavit was stipulated into the testimony at the trial with the same effect as though Richard P. Limburg had so testified in open court before the Surrogate. Dorine Campbell's counsel declined to assume this responsibility contending that she was a person interested in the Samuel J. Reckford estate, but was not a person '' interested in the trust '' consisting of Florence J. Reckendorfer's residuary estate in which she had not been cited. The Surrogate agreed with this position, and held that Dorine Campbell's appearance was limited to the Samuel J. Reckford estate, and that she was not a participant through her counsel in the judicial settlement of the Florence Reckendorfer estate although the contested issues in both were the same and were being tried together. It is not necessary at this time to decide whether the Surrogate was correct in this ruling, nor what effect the dual role of Richard P. Limburg as fiduciary might have had upon the result if the claim against the Samuel J. Reckford estate had succeeded. It failed. Thus far, Dorine Campbell has succeeded in the litigation. It would have been wiser for Mr. Limburg to have renounced letters testamentary in the Samuel Reckford estate. No one but Dorine Campbell is complaining, however, of his participation in this dual fiduciary role. The personal interest of his wife was on the side of the Joseph S. Reckford estate, which had two other executors

who were in position to exercise control, whose situation was not complicated by conflicting trust duties and who knew of Limburg's involvements but considered it wise to allow the matter to proceed as it did. Neither their good faith nor their judgment has been attacked. Edith Limburg and Marion Mack were separately represented by counsel, whose interests in the contest were identical with those of the Joseph S. Reckford estate.

That brings us to the subject which has the greatest bearing upon the decision of this appeal, which is that there is no evidence that Samuel J. Reckford did not fully discharge his obligations as between himself and his son Joseph S. Reckford. An argument has been made in behalf of respondent that Samuel J. Reckford may have distributed the principal of his wife's residuary estate to one or more of his children during his lifetime. There is no evidence that he did or did not do so. He was entitled under his wife's will to cause all of the principal to devolve upon any one or more of their children or descendants whom he might select, and undoubtedly any *inter vivos* distributions would be ratified provided that Mr. Reckford left a will exercising his power of appointment in favor of the person or persons who had received the property in his lifetime. Here it appears that Joseph S. Reckford was long in his father's confidence, and familiar with his father's property and the estate of his mother, and with the business and accounting methods which his father employed. They had been in business together. Not only did the father direct by his will that all of the principal of the residuary of the mother's estate should go to Joseph S. Reckford, but the father named him as his own executor. If Joseph S. Reckford had survived, instead of dying two months after his father, this litigation probably would not have occurred. In Bogert on Trusts and Trustees (Vol. 4, pt. 2, § 962, p. 240) it is said: "Cestuis who know of the method employed by a trustee in keeping accounts and do not object over a period of years will not be heard to object later", citing *Northern Trust Co.* v. *Continental Illinois Nat. Bank & Trust Co.* (307 Ill. App. 380). Although the rule is well established that if a trustee fails to keep proper accounts,

all doubts will be resolved against him and not in his favor
(2 Scott on Trusts, § 172, p. 919; *White* v. *Rankin*, 18 App. Div.
293, affd. 162 N. Y. 622), there must nevertheless be evidence
showing that the trustee has failed to account. Here we are
dealing with a situation where both the trustee (Samuel J.
Reckford) and the sole beneficiary (Joseph S. Reckford) have
died. It was Joseph S. Reckford to whom alone Samuel J.
Reckford or his estate was obligated to account; it is Joseph
S. Reckford who might have released the obligation to account
or who might have received the assets in his father's lifetime,
but who now, also, has been removed by death from the scene.
The situation is complicated, but not changed in respect to the
burden of proof, by the agreement which the Joseph S. Reck-
ford executors and Edith Limburg and Marion T. Mack made
on the withdrawal of the objections filed to the probate of the
will of Samuel J. Reckford. Only by that instrument did Edith
and Marion become entitled to any share in the remainder of
the Florence Reckendorfer estate, and, of course, the executors
of the Joseph S. Reckford estate felt duty bound to claim their
portion which, by the agreement of settlement, was 70%. We
are considering here, and as the decisive point in this litiga-
tion, on which side lay the burden of proof.

No citation of authorities would be necessary to establish
that the burden would rest on the Samuel J. Reckford estate
to show a proper disposition of the assets received from the
Reckendorfer estate, if it were proved that he had not satis-
factorily discharged his obligations in this regard. In order
to set a presumption in motion, however, such as the duty of
a fiduciary to account, there must be a foundation laid by show-
ing that he has not accounted or otherwise discharged his duties.
To that extent, the burden rests on the party who demands that
the trustee be surcharged (*Owen* v. *Blumenthal*, 280 N. Y. 96).
Here, that essential factor is left to conjecture, and, therefore,
the successors and assigns of the allegedly unpaid remainder-
man of the Reckendorfer estate must lose for failing to sustain
this burden and not their adversary. Such proof is lacking
inasmuch as there is no evidence that Samuel J. Reckford did
not satisfactorily account to his son, Joseph S. Reckford.
Joseph's executors are not in position to assert any claim which

Joseph could not have sustained. It must constantly be borne in mind that we are dealing with the location of the burden of proof on whether Samuel J. Reckford did discharge his trust duties to Joseph S. Reckford. The point is not that any release has been proved to have been given by Joseph, nor that an accounting was proved to have been rendered to him by his father, but that neither has the contrary been established. There is no presumption that one deceased person has not accounted to another deceased person. It will not be presumed, without evidence, that no adjustment of these matters was made in their lifetimes.

The reason on account of which the father made his son Joseph the sole beneficiary under his power of appointment, as he had the right to do, may have been that they understood each other, and that the son was the one to whom the father wanted to have the property go, or who had already received it or its equivalent in some form. Florence Reckendorfer chose not to limit the father's discretion to distribute between their different children, and to prefer one over the others. His choice could be inspired entirely by his personal predilection. His will, making Joseph the sole appointee, has been admitted to probate, so that it speaks with full force and effect, nor are we to assume that Samuel J. Reckford was incompetent or acted from undue influence because objections were filed that have been withdrawn.

The Surrogate has held, in effect, that the burden of proof on whether Samuel J. Reckford did discharge his duties with respect to this property rests upon these claimants, and that the sustaining of this burden is affected by the deaths of both the accounting party and of the beneficiary to whom alone he was required to account. Joseph Reckford is the only person who could have asserted the claim, he may have released it or been paid in some manner, and due to these circumstances the burden should be held to rest on the claimants of establishing failure to account. It should not readily be inferred that there has been no accounting between dead people, in the absence of evidence of what did occur. In holding that the burden of proving that Reckford failed to discharge his fiduciary obligations has not been sustained under the facts of this case, we do not attempt to decide what direct or circumstantial evidence

would be sufficient to establish that point in other factual situations.

The order of the Appellate Division, affirming the decree of the Surrogate should be affirmed, with costs to be fixed by the Surrogate.

LEWIS, Ch. J. (dissenting). Without repeating relevant facts which have been fairly and accurately set forth by Judge VAN VOORHIS, writing for a majority of the court, the basis of our dissent from the majority view can be briefly stated.

During the forty years of his life tenancy, Samuel J. Reckford kept no permanent records of his dealings with property of which his wife, by her will, gave him only the life use. Instead, his executor has discovered that he "followed the consistent practice of destroying records as they became more than six months old." It does not appear of record that during that forty-year term the life tenant accounted in any manner for the disposition made by him of personalty — of value in excess of $100,000 — which was delivered to him by representatives of his wife's estate and for which he gave his receipt. Although there was no provision in his wife's will which permitted him as legal life tenant to invade the principal of the fund created for his use, the executor of his estate, after careful search, has been unable to locate any part of the personalty comprised within that fund. Indeed, the petition in the present proceeding, verified by Janet S. Reckford, J. F. Fitzgerald, Edith F. Limburg and Marion T. Mack states that "No account of proceedings was ever filed by said Samuel J. Reckford during his lifetime * * *." That verified statement of fact stands in the record uncontroverted. Furthermore, of the personalty concededly delivered to the life tenant by representatives of his wife's estate there is principal unaccounted for in the amount of $129,799.11; and no excuse whatever is offered for the failure of the life tenant to account to remaindermen for property to which they are legally entitled.

It is settled law that where, as here, a will has created a life estate with remainder over to named persons, and property is delivered to the life tenant in accord with testamentary provisions, the property thus delivered is impressed with a trust for the benefit of remaindermen. That rule was stated by Chief

Judge CULLEN writing for this court in *Seaward* v. *Davis* (198 N. Y. 415, 420) — " It is doubtless true that ordinarily a life tenant in possession of personal property is a trustee to preserve the principal for the remaindermen to whom it may pass on his death " (see, also, *Peck* v. *Smith,* 227 N. Y. 228, 232; *Matter of von Kleist,* 265 N. Y. 422, 427–428).

As if to reinforce the rule mentioned above — which requires of a life tenant strict accountability in favor of remaindermen — the Legislature placed enforcement of a life tenant's fiduciary obligation in the domain of public policy when (by L. 1940, ch. 829) it enacted section 261-a of the Surrogate's Court Act. That statute, bearing the caption " *Accountability of legal life tenant or of the executor or administrator of a deceased legal life tenant or of the committee of an incompetent legal life tenant* ", provides in part: " *Every right granted by this article to or against a testamentary trustee and the legal representatives of a deceased testamentary trustee * * * shall apply to a similar proceeding by or against a legal life tenant and by or against the legal representatives of a deceased legal life tenant * * *.* " (Italics added.)

Where, as here, a life tenant — impressed with fiduciary obligations to remaindermen — fails to account for his dissipation of a fund as to which he has only a life use, doubts, if any, as to his use of the fund may be resolved against him. " He is bound to keep clear and accurate accounts, and if he does not the presumptions are all against him, obscurities and doubts being resolved adversely to him. (2 Perry on Trusts, § 821.) * * *." (*White* v. *Rankin,* 18 App. Div. 293, 294–295, affd. 162 N. Y. 622; and see 2 Scott on Trusts, § 172; 4 Bogert on Trusts and Trustees, Vol. 4, pt. 2, § 962, and Restatement, Trusts, § 172.)

In the record at hand " obscurities " abound. Indeed, the Surrogate's opinion, in the course of comment upon the lack of proof as to what disposition the life tenant had made of the fund — states: " But what has become of the personal property consisting of securities then valued at approximately $102,000? *No one knows * * *.* " (Italics added.)

The decisions and the statute cited above and the comments by eminent text writers make clear the rule that where, as here,

a legal life tenant has disregarded his fiduciary duty to remaindermen and has disposed of all personalty in the fund of which he had only the life use and in doing so has kept no record of such disposition, he or the representatives of his estate are under the legal duty to establish that the funds for which his receipt was given were not misused.

If, as here, such proof cannot be made, the law will presume him liable for any loss and his estate must bear that loss. If the rule were otherwise a life tenant, or a fiduciary of any type, could immunize himself from a surcharge by destroying, or by failing to keep, a record of his acts.

In the present case the record leaves us in no doubt that the life tenant's death stilled the *only* voice that could tell what became of the fund, the use of which was made available to him by his wife. Death, however, should not now serve to permit the life tenant's estate to escape a surcharge in the amount legally due to remaindermen.

The Surrogate's opinion herein suggests that "This court has equitable powers to achieve the ultimate goal  *  *  *." Mindful, as we are, that the will of the life tenant's wife is unmistakable evidence of her intention to withhold from her husband the right to invade the principal of the fund which she afforded him, we think a rule more appropriate to this record than the Surrogate's suggestion is a statement by ROLT, L. J., in *Cooper* v. *Martin* (L. R. 3 Ch. App. 47, 58) — "equity  *  *  *  will never uphold an act which will defeat what the person creating the power has declared, by expression or necessary implication, to be a material part of his intention". (Cf. *Farmers' Loan & Trust Co.* v. *Mortimer*, 219 N. Y. 290, 294.)

The order should be reversed and the proceeding remanded to Surrogate's Court for the entry of a decree surcharging the estate of the deceased life tenant in such amount as may be found due remaindermen legally entitled thereto.

CONWAY, DESMOND, DYE and FULD, JJ., concur with VAN VOORHIS, J.; LEWIS, Ch. J., dissents in opinion in which FROESSEL, J., concurs.

Order affirmed.